UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LAWRENCE SALAMENO, and
THERESA SALAMENO,

                Plaintiffs,

– against –

BRITTANY RAWLINGS,
SMARTBOSS, INC., and
FASHIONBOSS, LLC,

                Defendants.

**COMPLAINT**

19 Civ. _____

Jury trial demanded

Plaintiffs Lawrence and Theresa Salameno ("the Salamenos") by their attorneys, Yankwitt, LLP, for their complaint against Brittany Rawlings, SmartBoss, Inc., and FashionBoss, LLC (collectively, "Defendants"), in this action, allege as follows:

## PRELIMINARY STATEMENT

1.     This action is to recover for defendant Brittany Rawlings' fraud upon and breach of contract with plaintiffs Lawrence and Theresa Salameno, whose money Rawlings solicited with false representations, took, and suddenly disappeared with, without a trace. From 2012 through 2017, Rawlings solicited the Salamenos numerous times for money, ultimately obtaining more than $500,000 from them. Rawlings did so by claiming to be an entrepreneur pursuing a startup business, first "FashionBoss, LLC" and later "SmartBoss, Inc," and claiming that the Salamenos' funds were used for business expenses.

2.     To induce the Salamenos to give her money, Rawlings made misrepresentations and material omissions about her purported businesses. Rawlings claimed, for example, that a team of twelve executives and software engineers were working together to launch the

SmartBoss website and business. Rawlings further claimed that she had lined up additional investors in the business. On information and belief, these claims were false.

3. In June 2016, Rawlings and Lawrence Salameno agreed to a contract. By then, Rawlings had obtained at least $500,000 from the Salamenos. The contract set forth terms for issuance of stock in the future by SmartBoss to Lawrence Salameno. It also specified that Lawrence Salameno's proceeds would be used for SmartBoss's "Working capital needs, including salaries, R&D, rent, sales, legal"; that Rawlings was "responsible for management and day to day operations"; and that Lawrence Salameno "will receive standard information and inspection rights" from SmartBoss. Rawlings breached all of these terms. She never issued stock. She did not use the Salameno's funds entirely for SmartBoss. She did not maintain responsibility for managing day-to-day operations. And she did not provide standard information and inspection rights to the Salamenos.

4. Instead, after receiving more than half a million dollars from the Salamenos, Rawlings vanished from the Salamenos' lives. In 2016 and 2017, Rawlings continued to solicit and receive funds from the Salamenos, including at least another approximately $61,000 in addition to the $500,000 or more that was already paid. She claimed to be close to launching SmartBoss. But then, following a dinner she had at the Salamenos' home in August 2017, Rawlings ceased communicating with the Salamenos. The Salamenos made numerous attempts and pleas to Rawlings to get in touch, so that they could hear of the progress with SmartBoss, and confirm that Rawlings was ok. Rawlings did not reach out to the Salamenos, and ignored their numerous attempts to get her to respond to them.

5. Rawlings, by her reprehensible conduct and ultimate disappearance, breached numerous terms of her written agreement with plaintiff Lawrence Salameno. Moreover,

{00109923 7}   2

Rawlings' ultimate disappearance made plain that her solicitations of the Salamenos – whom Rawlings knew to be retired, beneficent, and trusting – was a long con.  Representations Rawlings had made to the Salamenos about her startup companies were intentionally false and misleading, and were fraudulent inducements in order that the Salamenos wire and mail tens of thousands of dollars at a time to Rawlings, for years.  On information and belief, not only did Rawlings make misrepresentations to obtain the Salamenos' money, she used it not for its intended purpose, but rather to keep up her active social life in the Miami party scene.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

7. Defendant Rawlings is, on information and belief, a citizen of New York.

8. Defendant SmartBoss, Inc. is a citizen of New York.  Defendant FashionBoss, LLC, is a citizen of Florida.

9. The Salamenos are citizens of New Jersey.

10. This Court has personal jurisdiction over the Defendants in this action because, among other things, Defendants conducted their purported business from a location in New York, New York.

11. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

12. Plaintiffs Lawrence and Theresa Salameno are husband and wife of thirty-seven years. They are retired, and reside in Mahwah, New Jersey. Plaintiff Lawrence Salameno suffers from Parkinson's disease. The Salamenos are well known philanthropists in the state of New Jersey, giving to, among other things, Ramapo College of New Jersey, which named its Salameno Spiritual Center after them.

13. Rawlings is a lawyer admitted in New York, among other states, and a self-professed entrepreneur. During most times relevant to this Complaint, she resided in New York, New York, where she purportedly founded defendant SmartBoss, Inc.

14. As set forth below, in or about August 2017, Rawlings, without notice or explanation, ceased communication with the Salamenos, effectively disappearing.

15. On information and belief, Rawlings currently resides in New York, New York.

16. Defendant SmartBoss, Inc., is a corporation organized and existing pursuant to the laws of the State of Delaware.

17. SmartBoss, Inc. was founded by defendant Rawlings, and purportedly was formed to operate a software program through a website, smartboss.com, for entrepreneurs and freelancers. SmartBoss, Inc., was purportedly located in New York, New York.

18. On information and belief, Defendant FashionBoss, LLC, is a limited liability company organized and existing pursuant to the laws of Florida. FashionBoss, LLC, was purportedly located in Miami, Florida.

## THE FACTS

19. In or about 2013, after becoming acquainted with the Salamenos through their son, whom Rawlings had come to know through a mutual friend, Rawlings began soliciting the

Salamenos for money. Rawlings' solicitations of the Salamenos for money continued for approximately five years, through 2017, and were part of an unlawful scheme by her to defraud the Salamenos.

20. On information and belief, defendant Rawlings has not been steadily employed from 2013 to the present.

21. On information and belief, when Rawlings began soliciting the Salamenos for money, she had and would continue to attend parties and other nightlife events regularly in and around Miami, Florida. Photos taken of Rawlings at Miami clubs have repeatedly appeared in such publications as "Miami Socialholic" and "World Red Eye," a "visual celebrity lifestyle journal from Miami Beach."

22. To the Salamenos, Rawlings held herself out as lawyer and entrepreneur working daily to operate a profitable start-up. She titled herself a "Founder / Fashion Lawyer / Fashion Designer," and claimed to be pursuing a fashion business consulting company, originally named "FashionBoss." She described FashionBoss as "a comprehensive educational resource and digital tool for creative entrepreneurs" who were fashion designers.

23. Rawlings maintained regular contact with the Salamenos in order to continue to solicit and receive money. In addition to regularly emailing the Salamenos, Rawlings ingratiated herself with the Salamenos by meeting with them for lunches and dinner and befriending them. Rawlings traveled to the Salamenos' home in New Jersey, and regularly discussed with Theresa Salameno other business and social pursuits. Rawlings referred to her as "an education partner, owner, and dear friend."

24. From 2013 to 2014, Rawlings regularly sent emails, letters, and other documents to the Salamenos about purported business plans for FashionBoss, such as a "Tactical Content

Production Plan Request for Funds," and "draft term sheets" purportedly contemplating the issuance of FashionBoss stock.

25. Rawlings claimed that FashionBoss was following a proven business model of Mint.com and Learnvest.com, and emphasized that the latter was purportedly valued at more than $100 million. She claimed that she had devoted her entire life and savings to FashionBoss.

26. Starting in or about January 2014, the Salamenos began making regular payments of funds to Rawlings. Rawlings referred to the payments as "disbursements" and "milestones." The payments included, but were not limited to, the following sums on or about the following dates in 2014:

    a. $60,000, January 2, 2014;

    b. $10,000, March 24, 2014;

    c. $15,000, June 16, 2014;

    d. $60,000, October 20, 2014;

    e. $25,000, December 30, 2014.

27. To induce the Salamenos to give her money, in 2014, Rawlings claimed she would use the funds for the business of FashionBoss to, among other things, produce content such as educational videos for the FashionBoss website. Rawlings described purported efforts she was making to produce videos, and claimed to be attempting to make numerous videos. She described particular video production costs, and her need to receive funds to cover these costs.

28. After they made payments to Rawlings, the Salamenos repeatedly requested to see samples of completed videos. Rawlings never provided samples of completed videos to the Salamenos, and claimed only to have access to segments.

29. In or about 2014, Rawlings claimed to "launch" the FashionBoss.com website. Rawlings told Lawrence Salameno, in part and substance, that FashionBoss had several thousand clients, but that the website was in "beta testing," and therefore FashionBoss did not yet have paying clients or any revenue. Rawlings claimed that substantial revenue was anticipated, however, once beta testing was complete.

30. On information and belief, Rawlings never followed through with the FashionBoss business plan that she had proposed to the Salamenos in order to obtain hundreds of thousands of dollars in funds. FashionBoss did not fully "launch," as promised. FashionBoss.com remained in "beta" mode, and FashionBoss generated no revenue.

31. On information and belief, Rawlings used a portion of the funds for her purported business FashionBoss until in or about approximately late 2014, and before then and thereafter, unbeknownst to the Salamenos, used the remainder of the funds for her own personal and social expenses.

32. For example, on or about February 24, 2016, Rawlings emailed Theresa Salameno that she previously "had to travel back to Florida for a followup procedure but am now back in NY." Rawlings described efforts she was making to obtain funds from other investors, and that she was receiving interest from "VCs," "all of whom want to invest but don't want to 'lead' the round." Rawlings described a particular investor that she claimed would invest "$1M-$4M, and then we have another 4 VCs who have expressed interest in joining the round for $10M - $25M." Rawlings described upcoming meetings she had scheduled for the purpose of "pitch[ing]" investors.

33. Three days later, however, on February 27, 2016, Rawlings attended a party in Miami called "House Saturdays at WALL," where a photograph of her was taken and published on a website covering Miami's social scene.

34. In or about 2016, Rawlings claimed to have a changed business plan, for a company called "SmartBoss, Inc." Rawlings claimed that SmartBoss was in the artificial intelligence industry. Rawlings described SmartBoss as an "A1 [sic] software and management platform where entrepreneurs and freelancers can benefit from a software that thinks and acts like an executive team." SmartBoss's purported business address was in New York, New York.

35. To induce the Salamenos to give her more money, in Spring 2016, Rawlings provided purported "updates" to the Salamenos on SmartBoss's purported progress, during in-person meetings and in emails. Rawlings claimed, among other things:

    a. that identified other investors would invest in SmartBoss after a lead investor, i.e. the Salamenos, committed to invest hundreds of thousands of dollars;

    b. that she had scheduled meetings with three venture capital funds;

    c. that SmartBoss's "current valuation is around $10 million";

    d. that Rawlings' mother, a Florida attorney, had invested $10,000;

    e. that SmartBoss had a chief operating officer, lead developer, and numerous other employees, including interns and contractors, and a data scientist consultant;

    f. that Rawlings was building an interactive website, and in doing so had "implemented a zero-bug environment, which means we do not build or improve features until all critical, foundational features are completed";

  g. that she and others with whom she was working had made "tremendous progress," with results that work "like magic."

36. For example, on or about April 4, 2016, Rawlings sent an email to the Salamenos. In the email, she claimed that she and her "team" had "completed a great deal of work this past month." She claimed that the launch of SmartBoss would be the following month, in May 2016. She claimed that "many of the VC investors we've spoken to said they are willing to jump on board with a seed investment after a lead investor commits $200,000." She claimed that "Our current valuation is around $10 million," and that her mother had "committed an additional $10,000" investment.

37. On or about April 11, 2016, the Salamenos made another payment to Rawlings of $230,000.

38. By June 2016, the Salamenos had provided Rawlings with at least $500,000.

39. On or about June 10, 2016, Rawlings executed a contract between SmartBoss, Inc., and Lawrence Salameno. Rawlings proposed and provided the contract, which was titled "Smartboss Inc. Terms of Issuance of Series Seed Preferred Stock" (the "Contract"). The Contract concluded: "This Summary of Terms will serve as a binding document upon the execution by both parties." It was signed by Rawlings and Lawrence Salameno.

40. The terms of the Contract included that SmartBoss, Inc. was the issuer of shares of stock of the company. The "aggregate proceeds" of the company were described as "$500,000 in aggregate, previously provided by [Lawrence Salameno] to Brittany Rawlings (the 'Founder') as loans ($260,000) and investment ($240,000) in connection with the development of the Business in FashionBoss, LLC (the 'Predecessor'). Previous loans and investment to be converted into Series Seed Shares as provided herein."

41. The Contract set forth terms for issuance of stock in the future by SmartBoss to Lawrence Salameno. It also included the following terms:

    a. Lawrence Salameno's proceeds would be used for SmartBoss's "Working capital needs, including salaries, R&D, rent, sales, legal";

    b. Rawlings was "responsible for management and day to day operations"; and

    c. Lawrence Salameno "will receive standard information and inspection rights" from SmartBoss.

42. In or about July and August 2016, Rawlings continued to solicit the Salamenos for money. In doing so, Rawlings continued to give purported information to the Salamenos about SmartBoss and its purported progress, including in emails and a powerpoint presentation. Rawlings claimed, among other things, the following:

    a. that SmartBoss's "Team" comprised not only Rawlings, but a data scientist and engineer, a chief marketing officer, a data and digital strategist, a chief financial officer, and a chief operating officer;

    b. that SmartBoss also had a "Dev Team," comprising six educated and credentialed software engineers;

    c. that SmartBoss was creating an "invite only beta site," and that it had more than a thousand users on it, and had been "collecting their credit cards" in order to later charge them $45 per month on average to use the site;

    d. that Rawlings had numerous other investors interested in investing in SmartBoss, including five venture capital funds with which she was

     meeting in September, "the other 8 VCs as well, and the 12 early stage VCs";

  e. that in 2012 Rawlings had made a $100,000 investment;

  f. that in 2013 to 2015 Rawlings had obtained an investment she called a "Friends and Family Investment: $1.5M $300,000 over 24 months in form of Convertible Note"; and

  g. that her monthly expenses for "developer salaries, patents, and rent" were approximately $50,000.

43. On or about September 7, 2016, the Salamenos provided another payment to Rawlings in the amount $50,000.

44. In or around late 2016 and early 2017, Rawlings' communications with the Salamenos became significantly less frequent. For example, on or about January 5, 2017, Theresa Salameno emailed Rawlings with the subject "Trying to reach you": "Good morning Brittany, We hope everything is ok with you as we have not heard from you in months. Larry and I have been reaching out to you since early November because we would like to go over the continuing launch and talk about how SmartBoss is growing."

45. In 2017, the Salamenos made at least two additional payments to Rawlings: $5,000 on February 10, 2017; and $6,000 on August 24, 2017.

46. In or about August 2017, Rawlings met with the Salamenos at their home in New Jersey, where she had dinner with the Salamenos and their family. Rawlings appeared uncharacteristically disheveled. Rawlings claimed, nevertheless, that SmartBoss was going well. She claimed that the SmartBoss launch would be soon, and that she and the Salamenos would all

be celebrating their success together soon. Rawlings did not describe any problems at SmartBoss.

47. Following the meeting in or about August 2017, described in the preceding paragraph, Rawlings disappeared from the Salamenos' life. Thereafter through January 2019, Rawlings ceased all contact with the Salamenos, no longer calling, emailing, or visiting the Salamenos. She did not respond to numerous attempts by the Salamenos to contact her directly, and through Rawlings' parents.

48. For example, in April 2018, Theresa Salameno emailed Rawlings: "Dear Brittany, I hope things are well with you and nothing unexpected has happened, either with your health, your family or business, we are very concerned that we have not been able to speak with you in over 8 months." The Salamenos requested that Rawlings provide, among other things, information about the status of SmartBoss and the loans and investments they had provided. Rawlings did not respond.

49. In or about early February 2019, the Salamenos received a letter from Rawlings, dated January 27, 2019. Rawlings apologized for her lack of communication, and purported to provide an update on SmartBoss. Rawlings claimed that a problem had arisen with a software developer and, "[l]ong story short, the developer had caused the software to be open to the world wide web and a 'hacker' walked in and took control of the server." Rawlings further claimed that the software developer then quit, and that the SmartBoss website never launched. She further claimed to have hired legal counsel to recover funds from the developer, and that a lawsuit would be filed shortly for that purpose.

50. In her January 27, 2019, letter, Rawlings claimed to be depressed, and compared her own suffering over SmartBoss to that of a mother suffering over a still-born baby.

51. Defendants Rawlings and SmartBoss, Inc. did not issue stock to the Salamenos.

52. Rawlings did not fulfill her responsibility for management and day to day operations of SmartBoss, Inc.

53. On information and belief, Rawlings did not use the entirety of the Salamenos' funds for Smartboss's working capital needs, including salaries, R&D, rent, sales, and legal, but instead used funds of the Salamenos for personal and social expenses.

54. Defendants Rawlings and SmartBoss, Inc. did not provide standard information and inspection rights to Lawrence Salameno.

## AS AND FOR A FIRST CAUSE OF ACTION
(Breach of Contract Against Defendants Brittany Rawlings and SmartBoss, Inc.)

55. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 54 with the same force and effect as if set forth herein.

56. Plaintiff Lawrence Salameno has fully performed his obligations under the Contract.

57. Defendants Rawlings and SmartBoss, Inc. breached the Contract by failing to launch and failing to operate SmartBoss, Inc.

58. Defendants Rawlings and SmartBoss, Inc. breached the Contract by failing to use Plaintiffs' funds for the business of SmartBoss, Inc.

59. Defendants Rawlings and SmartBoss, Inc. breached the Contract by ceasing communication with Plaintiffs in or around August 2017.

60. Defendants Rawlings and SmartBoss, Inc. breached the Contract by failing to provide standard information and inspection rights to Lawrence Salameno.

61. Defendants Rawlings and SmartBoss, Inc. breached the Contract by failing to issue stock.

62. As a result of Defendants' breaches of the Contract, the Salamenos have been damaged in an amount to be proved at trial, not less than $561,000, plus costs and interest.

### AS AND FOR A SECOND CAUSE OF ACTION
(Common Law Fraud Against All Defendants)

63. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 62 with the same force and effect as if set forth herein.

64. Defendant Rawlings, on behalf of herself and Defendants SmartBoss, Inc., and FashionBoss, LLC, made false and fraudulent representations, and omitted material information, to deceive the Salamenos and induce the Salamenos to give her money as loans and investments, which caused the Salamenos injury.

65. Specifically, on information and belief, Defendant Rawlings knowingly made false and fraudulent misrepresentations to the Salamenos, and made false and fraudulent misrepresentations to the Salamenos in reckless disregard of the truth, including about:

    a. how their money had been and would be used for business purposes, as alleged above in paragraphs 27, 35(e), (f), and (g), 36, 42 (a), (b), (c), and (g), 46, and 49;

    b. the existence of other interested investors, and the value of SmartBoss, Inc., as alleged above in paragraphs 32, 35(a), (b), (c), and (d), 36, and 42(d), (e), and (f);

    c. the existence of other investments in SmartBoss, Inc., and FashionBoss, LLC, as alleged above in paragraphs 25, 35(c) and (d), and 42(e) and (f);

      d.      the existence of numerous salaried employees, contractors, interns, and consultants of FashionBoss, LLC, and SmartBoss, Inc., as alleged above in paragraphs 27, 35(e), 36, and 42(a) and (b);

      e.      the operation of the FashionBoss, LLC and SmartBoss, Inc. companies, as alleged above in paragraphs 27, 29, 35(f) and (g), 36, 42(c) and (g), 46, and 49.

66. Specifically, on information and belief, Rawlings also knowingly omitted from her disclosures to the Salamenos material information, including that she was not spending the entirety of funds obtained from the Salamenos on business expenses of FashionBoss, LLC and SmartBoss, Inc., and was instead spending funds on her own personal and social expenses. Rawlings further omitted material information that there were problems related to the launches of FashionBoss, LLC and SmartBoss, Inc.

67. Plaintiffs Lawrence and Theresa Salameno reasonably relied on Rawlings' misrepresentations and material omissions in providing her with money.

68. Rawlings' false and fraudulent misrepresentations caused Plaintiffs Lawrence and Theresa Salameno injury, including funds that the Salamenos provided to Rawlings that Rawlings squandered.

69. As a result of Defendants' fraud, the Salamenos have been damaged in an amount to be proved at trial, not less than $561,000, plus costs and interest.

### AS AND FOR A THIRD CAUSE OF ACTION
(Accounting Against All Defendants)

70. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 69 with the same force and effect as if set forth herein.

71. Rawlings accepted funds from the Salamenos as loans and investments in FashionBoss, LLC and SmartBoss, Inc.

72. Rawlings claimed that the Salamenos' funds were used for particular business purposes.

73. Rawlings agreed to provide information and inspection rights.

74. Rawlings failed to provide information about SmartBoss and documents about SmartBoss's finances and expenditures.

75. Plaintiffs are entitled to an accounting, and Defendants should be directed to render such an accounting of the finances and expenditures of Defendants, in which Plaintiffs invested, and of the use and ultimate disposition of Plaintiffs' funds.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Lawrence and Theresa Salameno respectfully request this Court enter judgment:

    a. On the First Cause of Action, against Defendants Rawlings and SmartBoss, Inc., in an amount to be proven at trial totaling not less than $561,000, together with interest and costs;

    b. On the Second Cause of Action, against all Defendants, in an amount to be proven at trial totaling not less than $561,000, together with interest and costs;

    c. On the Third Cause of Action, against all Defendants, an accounting of the finances and expenditures of Defendants, in which Plaintiffs invested, and of the use and ultimate disposition of Plaintiffs' funds;

    d. The costs of this action; and

e. Such other and further relief as the Court deems just and proper.

Dated: White Plains, New York
May 15, 2019

**YANKWITT, LLP**

By: _____
Russell M. Yankwitt
Benjamin R. Allee
140 Grand Street, Suite 705
White Plains, New York 10601
Tel.: (914) 686-1500
*Attorneys for Plaintiffs*