UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LAWRENCE SALAMENO and
THERESA SALAMENO,

                *Plaintiffs*,                  Case No. 1:19-cv-04442-PGG-BCM

    - against -

BRITTANY RAWLINGS,
FASHIONBOSS, LLC, and
SMARTBOSS INC.,

                *Defendants*.
-------------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS
PLAINTIFFS' COMPLAINT**


                         DAVIDOFF LAW FIRM, PLLC
                         228 East 45th Street
                         Suite 1700
                         New York, NY 10017

                         MCLOUGHLIN, O'HARA, WAGNER
                         & KENDALL, LLP
                         250 Park Avenue
                         7th Floor
                         New York, NY 10117

                         *Attorneys for Defendants*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................1

BACKGROUND .......................................................................................................4

    A. Factual Allegations of the Complaint Concerning Plaintiffs' Claims ...................4

    B. Plaintiffs' Allegations Regarding Subject Matter Jurisdiction ............................7

    C. Facts Demonstrating that Mr. Salameno and Penny Black are Members of
       FashionBoss and that Penny Black is an Indispensable Party to this Action .........8

    D. Procedural History .............................................................................................10

ARGUMENT ............................................................................................................11

    I.       THERE IS NO SUBJECT MATTER JURISDICTION PURSUANT
            TO RULE 12(B)(1) .......................................................................................11

          A. There is No Diversity of the Parties ...........................................................11

          B. Plaintiffs Have No Individual Standing to Sue for Alleged Harm to
             FashionBoss and SmartBoss, and Mrs. Salameno Has No Standing
             Because She Has Not Suffered an Injury ...................................................15

    II.     DISMISSAL IS REQUIRED PURSUANT TO RULE 12(B)(7)
            BECAUSE PENNY BLACK IS AN INDISPENSIBLE PARTY .................17

    III.    THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION
            AND MUST BE DISMISSED PURSUANT TO RULE 12(B)(6) ................19

          A. Legal Standard for Rule 12(b)(6) Motion ..................................................19

          B. Plaintiffs Fail to State a Claim for Common-Law Fraud ..........................20

          C. Plaintiffs Fail to State a Claim for Breach of Contract .............................23

          D. Plaintiffs Fail to State a Claim for an Accounting ...................................25

CONCLUSION .........................................................................................................26

# TABLE OF AUTHORITIES

## FEDERAL CASE LAW

**Case Name**                                                                                                    **Page**

*Acito v. IMCERA Group, Inc.*,
    47 F.3d 47 (2d Cir. 1995) .....................................................................................22

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .....................................................................................19, 25

*Aurecchione v. Schoolman Transp. Sys., Inc.*,
    426 F.3d 635 (2d Cir. 2005) ...............................................................................10

*Avon Cosmetics (FEBO) Ltd. V. New Hampton, Inc.*,
    1991 WL 90808 (S.D.N.Y. May 22, 1991) .........................................................18

*Bayerische Landesbank, N.Y. Branch v. Aladdin Cap. Mgmt. LLC*,
    692 F.3d 42 (2d Cir. 2012) ...................................................................................13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................19

*Brown v Caldarella*,
    2008 U.S. Dist. Lexis 25918 (S.D.N.Y. Mar. 31, 2008) ......................................24

*Caputo v. Pfizer, Inc.*,
    267 F.3d 181 (2d Cir. 2001) .................................................................................19

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) .................................................................................19

*Cohen v. S.A.C. Trading Corp.*,
    711 F.3d 353 (2d Cir. 2013) ..........................................................................19, 21

*Crigger v. Fahnestock & Co.*,
    443 F.3d 230 (2d Cir. 2006) ..........................................................................21, 22

*Davis v. Cannick*,
    2015 WL 1954491 (E.D.N.Y. Apr. 29, 2015) .....................................................12

*Dunmann Realty, LLC v. Faust*,
    2013 U.S. Dist. Lexis 1127 (S.D.N.Y. Jan. 3, 2013) ...........................................13

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*,
    545 U.S. 546 (2005) ......................................................12

*Faulkner v. Beer*,
    463 F.3d 130 (2d Cir. 2006) ...........................................20

*Filetech S.A. v. Fr. Telecom S.A.*,
    157 F.3d 922 (2d Cir. 1998) ...........................................13

*Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*,
    376 F. Supp. 2d 385 (S.D.N.Y. 2005) .........................16, 17

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
    669 F. Supp. 2d 405 (S.D.N.Y. 2009) ..............................23

*Global Network Commc'ns, Inc. v. City of New York*,
    458 F.3d 150 (2d Cir. 2006) ...........................................19

*Hai Yang Liu v. 88 Harborview Realty, LLC*,
    5 F. Supp. 3d 443 (S.D.N.Y. 2014) .................................13

*Handelsman v. Bedford Vill. Assocs. Ltd P'ship*,
    213 F.3d 48 (2d Cir. 2000) .........................................13, 14

*Kamen v. Am. Tel. & Tel. Co.*,
    791 F.2d 1006 (2d Cir. 1986) .........................................13

*Keith v. Black Diamond Advisors, Inc.*,
    48 F. Supp. 2d 326 (S.D.N.Y. 1999) ...............................13

*Kiryas Joel Alliance v. Vill. Of Kiryas Joel*,
    495 F. App'x 183 (2d Cir. 2012) ....................................16

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006) ...........................................22

*Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*,
    87 F.3d 44 (2d Cir. 1996) ..............................................12

*Linardos v. Fortuna*,
    157 F.3d 945 (2d Cir. 1998) ...........................................12

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015) ...........................................21

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................................15, 17

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000) ...........................................................11

*Martinez v. Riverbay Corp.*,
    2016 WL 5818594 (S.D.N.Y. Oct. 4, 2016) .........................................11

*Miller v. HSBC Bank USA, N.A.*,
    2015 WL 585589 (S.D.N.Y. Feb. 11, 2015) ..........................................24

*Morrison v. Nat'l Austl. Bank Ltd.*,
    547 F.3d 167 (2d Cir. 2008) ...........................................................11

*New Millennium Capital Partners, III, LLC v. Juniper Grp. Inc.*,
    2010 WL 1257325 (S.D.N.Y. Mar. 26, 2010) ......................................13

*Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co., Inc.*,
    772 F.3d 111 (2d Cir. 2014) ...........................................................12

*Pulse Creations, Inc. v. Vesture Grp., Inc.*,
    154 F. Supp. 3d 48 (S.D.N.Y. 2015) ..................................................10

*Richmond v. Int'l Bus. Machs. Corp.*,
    919 F. Supp. 107 (E.D.N.Y. 1996), aff'd, 841 F.2d 1116 (2d Cir. 1988) ............12

*Rose v. Simms*,
    1995 WL 702307 (S.D.N.Y. Nov. 29, 1995) ........................................18

*Smith v. Kessner*,
    183 F.R.D. 373 (S.D.N.Y. 1998) .....................................................18

*Stratte–McClure v. Morgan Stanley*,
    776 F.3d 94 (2d Cir. 2015) .............................................................21

*Taylor v. Vt. Dep't of Educ.*,
    313 F.3d 768 (2d Cir. 2002) ...........................................................19

*Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc.*,
    531 F.3d 190 (2d Cir. 2008) ...........................................................21

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) .....................................................................21

iv

*Wisconsin Dep't of Corrections v. Schacht*,
    524 U.S. 381 (1998) ........................................................................12

*Wolff v. Rare Medium, Inc.*,
    210 F. Supp. 2d 490 (S.D.N.Y. 2002) ..............................................23

*Young-Gibson v. Patel*,
    476 Fed. App'x 482 (2d Cir. 2012) ..................................................12

## STATE CASE LAW

**<u>Case Name</u>**                                                            **<u>Page</u>**

*Abrams v. Donati*,
    66 N.Y.2d 951 (1985) .....................................................................16

*Bokat v. Getty Oil Co.*,
    262 A.2d 246 (Del. Supr. 1970) .......................................................16

*Ctr. For Rehabilitation and Nursing at Richwood, LLC v. S & L Birchwood LLC*,
    92 A.D.3d 711 (2d Dep't 2012) .......................................................25

*Elghanian v. Elghanian*,
    277 A.D.2d 162 (1st Dep't 2000) .....................................................25

*Froonjian v. Ultimate Combatant, LLC*,
    169 So. 3d 151 (Fla. 4th DCA 2015) ...............................................14

*Home Title Co. of Md. v. LaSalla*,
    257 So. 3d 640 (Fla. 2nd DCA 2018) ..............................................16

*Moran v. Household Int'l, Inc.*,
    490 A.2d 1059 (Del. Ch. 1985), aff'd, 500 A.2d 1346 (Del. Supr. 1985) ............16

*Scirica v. Colantonio*,
    2013 WL 4767374 (N.Y. Sup. Ct. Aug. 29, 2013) .............................25

## FEDERAL STATUTES AND RULES

**<u>Statute</u>**                                                              **<u>Page</u>**

28 U.S.C. § 1331 ...................................................................................12

28 U.S.C. § 1332 ...................................................................................12

Fed. R. Civ. P. 12(b)(1) .........................................................................10

Fed. R. Civ. P. 12(b)(6) ..................................................................................19

Fed. R. Civ. P. 12(b)(7) ..................................................................................17

Fed. R. Civ. P. 19(a) .......................................................................................18

Fed. R. Civ. P. 19(b) .......................................................................................18

Fed. R. Civ. P. 8(a) .........................................................................................19

Fed. R. Civ. P. 9(b) .........................................................................................19

## STATE STATUTES AND RULES

**Statute**                                                                                                           **Page**

Fla. Stat. § 605.0102(45) (2015) .....................................................................14

Fla. Stat. § 605.0410 (2019) ...........................................................................15

Fla. Stat. § 608.402(23) (2013) .................................................................14, 18

Fla. Stat. § 608.402(24) (2012) .......................................................................14

N.Y. C.P.L.R. § 213(8) ...................................................................................23

Defendants, Brittany Rawlings ("Ms. Rawlings"), FashionBoss, LLC ("FashionBoss"), and SmartBoss Inc. ("SmartBoss") (collectively, "Defendants"), by and through undersigned counsel, respectively submit this memorandum of law in support of Defendants' motion, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1), (6), and (7), for an order dismissing the May 15, 2019 Complaint (ECF No. 1) ("Compl.")[1] filed by Plaintiffs, Lawrence Salameno ("Mr. Salameno") and Theresa Salameno ("Mrs. Salameno") (collectively, "Plaintiffs" or the "Salamenos"), in its entirety.

## PRELIMINARY STATEMENT

As a threshold issue, the Complaint must be dismissed because this Court does not have subject matter jurisdiction to adjudicate Plaintiffs' claims as there is no of diversity of citizenship amongst the parties. Mr. Salameno was an investor as well as a member or shareholder in the two companies that are parties to this action: FashionBoss and SmartBoss – each of which were founded and managed by Ms. Rawlings. Because Mr. Salameno is a member of FashionBoss, a Florida limited liability company, he cannot bring a diversity action against FashionBoss pursuant to the black letter law of this jurisdiction, and any claim against SmartBoss cannot be maintained in his individual capacity, and can only be brought derivatively.

In addition to ignoring obvious legal authority, Plaintiffs attempt to sidestep the lack of diversity jurisdiction by omitting the entities Penny Black Holdings, LLC ("PBH") and Penny Black Holdings II, LLC ("PBHII"), d/b/a "Penny Black, a venture capital firm" (PBH and PBHII collectively, "Penny Black") as parties to this action. This is done despite the fact that Plaintiffs seek a recovery in this case on behalf of the investments made by each of the Penny Black entities.

---

[1] *See* Exhibit "A" to Brittany Rawlings Declaration in support of the instant motion dated October 2, 2019 ("Decl.").

At all relevant times, PBH and PBHII were investors, owners, members and/or shareholders of FashionBoss and SmartBoss, as they each invested separately from Mr. Salameno who also invested in his individual capacity with funds from his joint bank account with Mrs. Salameno. This was confirmed by Plaintiffs' own agent at the deposition of Daisy Acosta.

Plaintiffs omit this information and fail to join Penny Black as a necessary party because it would defeat their claim of diversity jurisdiction as well as reinforce Defendants' contention that Mr. Salameno was not an oblivious retiree who was the victim of a "long con," rather he was and is an accredited, sophisticated investor who successfully managed a New York City venture capital investment firm, had numerous communications and meetings with Ms. Rawlings, and conducted a thorough due diligence prior to the investment into FashionBoss and SmartBoss.

While Plaintiffs now admit funds from Penny Black were used to invest in the FashionBoss and SmartBoss, Plaintiffs have failed to produce evidence of Mrs. Salameno's standing as a Plaintiff in this action in her individual capacity. Mrs. Salameno never invested in FashionBoss or SmartBoss, was never recognized or acted as a member or shareholder of either company, and was never a party to any contract with Defendants.

Even if this Court has jurisdiction, each of Plaintiffs' three causes of action for fraud, breach of contract, and for an accounting are subject to dismissal pursuant to Rule 12(b)(6) for failure to state a cause of action.

Plaintiffs' fraud claim defies credulity and must be dismissed under Rule 9(b) as the Complaint completely lacks any factual basis to satisfy the specificity requirements for a pleading. Plaintiffs assert that Ms. Rawlings knowingly made misrepresentations as part of part of an "unlawful scheme by her to defraud the Salamenos" – a "long con" – and "induce" them to give her money as investments over a five year period that she used to "keep up her active social life in

Miami party scene." Compl. ¶¶ 5, 19, 64-68. Plaintiffs purportedly claim that, because they reasonably relied on Ms. Rawlings' alleged misrepresentations and material omissions in providing her with money, her allegedly "false and fraudulent misrepresentations" caused Plaintiffs' injury. *Id*. Plaintiffs' meritless claim that Ms. Rawlings used corporate funds for her own personal benefit is wholly conclusory and not supported by any factual allegations in the Complaint. The baseless allegations that Ms. Rawlings made misrepresentations to Plaintiffs concerning her businesses' operations, investors, and/or valuation likewise are bereft of any factual support.

Plaintiffs' breach of contract claims suffers from the same fatal flaws. At the outset, Ms. Rawlings is not bound in in her individual capacity to any contract with Plaintiffs. Further, Defendants contend that the term sheet dated June 10, 2016, which underlies Plaintiffs' breach of contract claim, was never contemporaneously executed by Mr. Salameno, nor was a fully executed copy delivered to Defendants or their agents in any manner prior to this lawsuit. Therefore, the June 10, 2016 term sheet was never effectuated and cannot serve as a basis upon which Plaintiffs may assert their breach of contract claim. Moreover, the allegation that Ms. Rawlings improperly diverted funds from SmartBoss for her personal gain and failed to operate SmartBoss on a day-to-day basis is pure speculation.

Further, the allegation that Ms. Rawlings and SmartBoss failed to provide inspection rights to Mr. Salameno or issue him stock certificates do not support a breach of contract claim. Firstly, Plaintiffs assert no allegations that demands for such were made on SmartBoss and, secondly, monetary damages cannot flow from such purported omissions. Next, Plaintiffs do not allege that SmartBoss did not recognize Mr. Salameno as a shareholder. Thus, Plaintiffs' breach of contract claim cannot survive a motion to dismiss.

Lastly, Plaintiffs' claim for an equitable accounting fails because there is no fiduciary relationship alleged between Plaintiffs and Defendants.

Each of the above reasons, standing alone, would be sufficient for this Court to dismiss the Complaint. When taken together, the deficiencies in the Complaint requiring dismissal of this action are clear. Accordingly, Defendants respectfully request that the Court grant the instant motion in its entirety.

## BACKGROUND

### A. Factual Allegations of the Complaint Concerning Plaintiffs' Claims

Plaintiffs commenced this action seeking "to recover for defendant Brittany Rawlings' fraud and breach of contract with plaintiffs Lawrence and Theresa Salameno. . . ." Compl. ¶ 1. The Complaint also asserts a claim for an accounting against all Defendants. *Id.* ¶ 75.

With respect to their fraud claim, Plaintiffs allege that Ms. Rawlings, on behalf of herself and SmartBoss and FashionBoss, knowingly made false and fraudulent misrepresentations to induce the Plaintiffs to invest no less than $500,000 in FashionBoss and SmartBoss "from 2012 through 2017" claiming that such "funds were used for business expenses." *Id.* ¶¶ 1, 2, 64-66.[2]

---

[2] The Complaint is not only rife with inconsistencies regarding the timing of Mr. Salameno's investment, but omits essential information regarding when Mr. Salameno (and the Penny Black entities) first agreed to invest in FashionBoss and disburse investment funds to FashionBoss. It is readily apparent that such information was omitted to avoid a statute of limitations defense. For instance, in one paragraph of the Complaint, Plaintiffs allege that, "[i]n or about **2013** […] Rawlings began soliciting the Salamenos for money." *Id.* ¶ 19 (emphasis added). However, another paragraph of the Complaint states that such solicitations occurred "[f]rom **2012** through 2017." *Id.* ¶ 1 (emphasis added). Plaintiffs further allege that, in **2014**, Ms. Rawlings "induce[d] the Salamenos to give her money" by claiming that "she would use the funds for the business of FashionBoss . . . ." *Id.* ¶ 26 (emphasis added). This allegation contradicts documentary evidence and deposition testimony that an oral investment agreement between Mr. Salameno and Penny Black, on one hand, and FashionBoss, on the other, was reached on April 1, 2013, not 2014. *See* Decl. Exs. B-D, L at 40:11-19, 138:19-25; 151:05-12. Likewise, Plaintiffs allege that, "[s]tarting in or about **January 2014**, the Salamenos began making regular payments of funds to Rawlings." *Id.* ¶ 26 (emphasis added). This allegation contradicts documentary evidence demonstrating that

For instance, Plaintiffs allege that, "in 2014," Ms. Rawlings claimed that "she would use the [Plaintiffs'] funds [to] […] produce content such as educational videos for the FashionBoss website." *Id.* ¶ 27. Further, Plaintiffs allege that, "in Spring 2016," Ms. Rawlings claimed "that SmartBoss had a chief operating officer, lead developer, and numerous other employees, including interns and contractors, and a data scientist consultant." Id. ¶ 35(e). Plaintiffs also allege that Ms. Rawlings claimed that she was "building an interactive website" for SmartBoss and "had made 'tremendous progress'". *Id.* ¶ 35(f), (g). Plaintiffs allege that Ms. Rawlings sent an April 4, 2016 email claiming that SmartBoss had "completed a great deal work this past month"; that additional investors were "willing to jump on board with a seed investment after a lead investor commits $200,000"; that SmartBoss's "current valuation is around $10 million"; and that Ms. Rawlings' mother had "committed an additional $10,000 investment." *Id.* ¶ 36. Plaintiffs also allege that, "[i]n or about July and August 2016," Ms. Rawlings sent emails to Plaintiffs containing information regarding SmartBoss's operations, including its employees, website and users, and operating expenses. *Id.* ¶ 42(a), (b), (c) and (g). Lastly, Plaintiffs allege that, "[i]n or about August 2017," during a dinner with the Plaintiffs at their home, Ms. Rawlings purportedly stated that "SmartBoss was going well" and "that the SmartBoss launch would be soon . . . ." *Id.* ¶ 46. Although Plaintiffs claim that each of the above statements were false and made to fraudulently induce the Plaintiffs to invest their money in FashionBoss and SmartBoss, the Complaint does not set forth any information to indicate that any such statements were false, nevertheless that Ms. Rawlings knowingly made such statements with the requisite intent to defraud Plaintiffs.

---

Mr. Salameno and Penny Black first dispersed funds to FashionBoss in the amount of $50,000 on **April 1, 2013**, not in January 2014. *Id.*

With respect to their breach of contract claim, Plaintiffs allege that Ms. Rawlings executed a contract with Mr. Salameno on June 10, 2016, prior to Ms. Rawlings having "obtained at least $500,000 from the Salamenos." *Id.* ¶¶ 3, 39. Plaintiffs do not allege that Mrs. Salameno was a party to such contract. The Complaint states that the "contract set forth terms for issuance of stock in the future by SmartBoss to Lawrence Salameno" and "specified that Lawrence Salameno's proceeds [and **not** Mrs. Salameno's proceeds] would be used for SmartBoss's 'Working capital needs […]; that Rawlings was 'responsible for management and day to day operations'; and that Lawrence Salameno 'will receive standard information and inspection rights' from SmartBoss.'" *Id.* ¶¶ 3, 41. Plaintiffs claim Ms. Rawlings breached all of these terms. *Id.* ¶¶ 3, 57-61. However, Plaintiffs do not allege any facts demonstrating that SmartBoss did not use the investment proceeds for its working capital needs; that Ms. Rawlings did not manage SmartBoss's daily operations; that Mr. Salameno made a demand upon SmartBoss for inspection rights or the issuance of stock; or that SmartBoss did not recognize Mr. Salameno as a shareholder. Plaintiffs do not attach a copy of the purported June 10, 2016 term sheet (the "June 2016 Term Sheet") as an exhibit to the Complaint. *See* Decl. Ex. J.

Although Plaintiffs claim Mr. Salameno signed the June 2016 Term Sheet and that such agreement would be a "binding document upon the execution of both parties," *id.* ¶ 39, they do not allege when he signed it. Indeed, Defendants contend that Mr. Salameno did not sign the agreement at any point in time prior to contemplating the present litigation in 2019 and never provided Defendants with a countersigned copy in any manner prior to such being produced in this action during jurisdictional discovery. *See* Decl. ¶ 36. Nowhere in the Complaint do the Plaintiffs state when, where or how this agreement was signed by either or both parties and when or how it was delivered to any of the Defendants.

Plaintiffs claim that after receiving "another approximately $61,000 in addition to the $500,000 or more that was already paid," Ms. Rawlings "ceased communications with the Salamenos" after a dinner held "at the Salamenos' home in August 2017." Compl. ¶ 4. Plaintiffs claim that Ms. Rawlings "ultimate disappearance made plain that her solicitations of the Salamenos – whom Rawlings knew to be returned, beneficent, and trusting – was a long con." *Id.* ¶ 5. Further, Plaintiffs allege that their money was used by Ms. Rawlings "to keep up her active social life in the Miami party scene." *Id.* Plaintiffs' fabricated and salacious claim concerning a purported "long con" are based on rampant speculation and not any identifiable factual allegations.

Nevertheless, Plaintiffs admit to receiving a letter from Ms. Rawlings dated January 27, 2019, in which she "apologized for her lack of communication, and purported to provide an update on SmartBoss." *Id.* ¶ 49. Plaintiffs state that Ms. Rawlings "claimed that a problem had arisen with a software developer and, '[l]ong story short, the developer had caused the software to be open to the World Wide Web and a 'hacker' walked in and took control of the server.'" *Id.* Plaintiffs allege that Ms. Rawlings "further claimed that the software developer then quit, and that the SmartBoss website never launched. She further claimed to have hired legal counsel to recover funds from the developer, and that a lawsuit would be filed shortly for that purpose." *Id.* Plaintiffs do not allege that they conducted any follow up with Ms. Rawlings to verify the substance of her January 27, 2019 letter.

**B. Plaintiffs' Allegations Regarding Subject Matter Jurisdiction**

The Complaint incorrectly states that "[t]his Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest of costs, and is between citizens of different states." *Id.* ¶ 6. Plaintiffs allege that Ms. Rawlings is a citizen of New York. *Id.* ¶ 7. Plaintiffs allege that

SmartBoss is a citizen of New York, *id.* ¶ 8, and is a corporation formed under the laws of the State of Delaware. *Id.* ¶ 16. Plaintiffs allege that FashionBoss is a citizen of Florida, *id.* ¶ 8, and is a limited liability company formed under the laws of the State of Florida. *Id.* ¶ 18. Plaintiffs further allege that "Defendants purportedly conducted their business from a location in New York, New York," *id.* ¶ 10, although Plaintiffs also claim that FashionBoss "was purportedly located in Miami, Florida. *Id.* ¶ 18. Although FashionBoss is a named defendant in this action, the Complaint does not identify any members of FashionBoss.

## C. Facts Demonstrating that Mr. Salameno and Penny Black are Members of FashionBoss and that Penny Black is an Indispensable Party to this Action

Mr. Salameno and the Penny Black entities are members of FashionBoss. Mr. Salameno and Penny Black each separately invested in FashionBoss with the expectation that they would collectively receive a 33% ownership interest in exchange for their investments. *See* Decl. Ex. C; L at 39:06-16; 42:06-43:06; 90:08-19; 126:03-15; 160:10-20. Penny Black conducted due diligence prior to investing in FashionBoss. *See* Decl. ¶ 15; Ex. B. Furthermore, Ms. Rawlings' email communications with Penny Black's employees surrounding Penny Black's investment and the aforementioned due diligence were sent to '@pennyblackllc.com' email addresses. *See, e.g.*, Decl. Exs. B-F. The Penny Black entities invested for ownership in FashionBoss. *See* Decl. Ex. L at 39:12-16; 156:19-25.

FashionBoss verbally agreed to recognize Mr. Salameno and Penny Black as members following the April 1, 2013 meeting when Fashion received a $50,000 investment sourced from the Salamenos' joint account. *See* Decl. ¶¶ 16-17, 21; Ex. D. FashionBoss also retained counsel who drafted a term sheet with a stock vesting schedule for which "Penny Black" was named as an investor. *See* Decl. Ex. E. Despite investing in FashionBoss, Mr. Salameno and Penny Black did not sign the term sheet at any time. *See* Decl. ¶ 20. Although FashionBoss does not have a written

operating agreement that sets forth a list of its members, such is not required under Florida law (as discussed *infra*). *Id.* ¶ 22.

However, Ms. Rawlings, as the managing member of FashionBoss and a majority owner therein, approved the admission of Mr. Salameno and Penny Black as members of FashionBoss verbally on April 1, 2013 and in writing on June 10, 2016 when she signed a Written Action approving all prior actions taken by FashionBoss as well as at all times acknowledging their ownership interest. *See* Decl. Ex. K. Further, the June 2016 Term Sheet recognizes Mr. Salameno and/or his assignees as a member of FashionBoss as well as a shareholder in SmartBoss – the "assignee" was always understood to be Penny Black. *See* Decl. Ex. J.

The Complaint omits all mention of the Penny Black entities, even though Plaintiffs attempt to obtain a recovery in this action on behalf on the investments both PBH and PBHII made into FashionBoss and SmartBoss. *See* Decl. Ex. A. Plaintiffs do not dispute that approximately half of the $561,000 Plaintiffs claim they invested in FashionBoss and SmartBoss came from accounts maintained exclusively by PBH and PBHII. *See* Decl. Ex. I.[3]

At all relevant times, Mr. Salameno was and is the founder and manager of Penny Black, "a New York based venture capital firm with a focus on seed- and early-round venture capital." *See* Decl. ¶ 7. Both Penny Black entities are limited liability companies formed under the laws of the State of New York and maintain a principal place of business located at 900 Third Avenue, 25th Floor, New York City. *Id.* ¶¶ 8-11.

According to the August 20, 2019 deposition testimony of Daisy Acosta, Mr. Salameno's former long-time secretary and the representative of the Penny Black entities for purposes of jurisdictional discovery, Penny Black had three employees (excluding Mr. Salameno): Charles

---

[3] *See, e.g.*, ECF No. 17, Benjamin Allee Letter to Court dated July 22, 2019 at n. 4.

Salameno (the Salamenos' son), Jim Barry (the Managing Director of Penny Black) and Elliott Durbin (the Managing Director and purported co-founder of Penny Black). *See* Decl. Ex. L at 27:06-13.

Ms. Acosta also confirmed that Mr. Salameno and the Penny Black entities (which, for all intents and purposes were treated as the same company, with the same management, employees and decision-making structure (*id.* at 35:13-22)) each invested in FashionBoss in exchange for collectively maintaining a 33% ownership stake and membership interest in the company. *Id.* at 39:06-16; 42:06-43:06; 90:08-19; 126:03-15; 160:10-20. Ms. Acosta further confirmed that the investment agreement between FashionBoss, on one hand, and Mr. Salameno and Penny Black, on the other hand, was made verbally during the April 1, 2013 meeting between the parties. *Id.* at 40:11-19, 138:19-25; 151:05-12. Ms. Acosta testified that Mr. Salameno and Penny Black never gave loans to FashionBoss and that all funds were treated as investments for an ownership interest in FashionBoss for both Mr. Salameno and Penny Black. *Id.* at 84:20-24.

### D. **Procedural History**

Plaintiffs commenced this action by filing a Complaint on May 15, 2019. ECF No. 1. Defendants waived service and appeared in this action on May 20, 2019. ECF No. 7. Defendants have not filed a responsive pleading in this action.

On June 20, 2019, Defendants filed a pre-motion letter requesting permission to move for the dismissal of the Complaint based on lack of subject matter jurisdiction and failure to join an indispensable party. ECF No. 10. On July 9, 2019, the Court held a pre-motion conference to discuss Defendants' anticipated motion to dismiss, and, on July 10, 2019, issued an Order directing the parties to conduct jurisdictional discovery and to submit a joint letter regarding their respective positions on what jurisdictional discovery revealed. ECF No. 15. On August 28, 2019, the parties

submitted their joint letter setting forth their respective positions concerning jurisdiction discovery. ECF No. 37. On September 6, 2019, the Court directed Defendants to file their motion to dismiss for lack of subject-matter jurisdiction and any other grounds permitted under Rule 12(b).

## ARGUMENT

### I. THERE IS NO SUBJECT MATTER JURISDICTION PURSUANT TO RULE 12(B)(1)

#### A. There is No Diversity of the Parties.

It is axiomatic that, since FashionBoss is a litigant in this case against one of its members, Mr. Salameno, diversity jurisdiction will not exist because the parties are not diverse, and the Complaint must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) as a result.

Rule 12(b)(1) provides for dismissal of an action for "lack of subject matter jurisdiction." *See* Fed. R. Civ. P. 12(b)(1). "[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it lacks the statutory or constitutional power to adjudicate it." *Pulse Creations, Inc. v. Vesture Grp., Inc.*, 154 F. Supp. 3d 48, 52-53 (S.D.N.Y. 2015) (quoting *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005)). "In resolving a Rule 12(b)(1) motion to dismiss, '[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff, but jurisdiction must be shown affirmatively, and that showing [may] not [be] made by drawing from the pleadings inferences favorable to the party asserting it.'" *Martinez v. Riverbay Corp.*, 2016 WL 5818594, at *3 (S.D.N.Y. Oct. 4, 2016) (quoting *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)). Thus, Plaintiffs "[have] the burden of proving by a preponderance of the evidence that [subject matter jurisdiction] exists." *Pulse Creations*, 154 F. Supp. 3d at 53 (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).

Where an alleged complaint does not raise a federal question, 28 U.S.C. § 1331, "the district courts shall have original [federal] jurisdiction … [only] where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between … citizens of different states." 28 U.S.C. § 1332. Complete diversity requires that all the plaintiffs be citizens of different states than all of the defendants; therefore, diversity of citizenship among the parties exists only if no plaintiff and no defendant are citizens of the same state. *See Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 388 (1998). "For purposes of diversity jurisdiction, [an individual's] citizenship depends on his [or her] domicile." *Linardos v. Fortuna*, 157 F.3d 945, 948 (2d Cir. 1998).

Diversity jurisdiction exists when all plaintiffs are citizens of states diverse from those of all defendants. *See Pennsylvania Pub. Sch. Employees' Ret. Sys. v. Morgan Stanley & Co., Inc.*, 772 F.3d 111, 117-18 (2d Cir. 2014) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)). The party asserting diversity jurisdiction has the burden to prove the same. *Pennsylvania Pub. Sch. Employees' Ret. Sys.*, 772 F.3d at 118. "[D]iversity of citizenship should be distinctly and positively averred in the pleadings, or should appear with equal distinctness in other parts of the record[.]" *Leveraged Leasing Admin. Corp. v. PacificCorp Capital, Inc.*, 87 F.3d 44, 47 (2d Cir. 1996) (internal quotation marks omitted). "A conclusory allegation in the Complaint regarding diversity of citizenship does not extinguish the Court's responsibility to determine, on its own review of the pleadings, whether subject matter jurisdiction exists." *Richmond v. Int'l Bus. Machs. Corp.*, 919 F. Supp. 107, 108 (E.D.N.Y. 1996), aff'd, 841 F.2d 1116 (2d Cir. 1988). For the purpose of diversity jurisdiction, "a statement of the parties' residence is insufficient to establish their citizenship." *Davis v. Cannick*, 2015 WL 1954491, at *2 (E.D.N.Y. Apr. 29, 2015); *Young-Gibson v. Patel*, 476 Fed. App'x 482, 483 (2d Cir. 2012).

The citizenship of a limited liability company ("LLC") is determined by the citizenship of each of its members. *See, e.g.*, *Bayerische Landesbank, New York Branch v. Aladdin Capital Management LLC*, 692 F.3d 42, 49 (2d Cir. 2012); *Handelsman v. Bedford Vill. Assocs. Ltd P'ship*, 213 F.3d 48, 51–52 (2d Cir. 2000). "A complaint premised upon diversity of citizenship must allege the citizenship of natural persons who are members of a limited liability company and the place of incorporation and principal place of business of any corporate entities who are members of the limited liability company." *New Millennium Capital Partners, III, LLC v. Juniper Grp. Inc.*, 2010 WL 1257325, at *1 (S.D.N.Y. Mar. 26, 2010), (citing *Handelsman*, 213 F.3d at 51–52)); *Bishop v. Toys "R" Us-NY LLC*, 414 F. Supp.2d 385, 389 n.1 (S.D.N.Y. 2006), aff'd, 385 Fed. App'x 38 (2d Cir. 2010).

A limited liability company "is completely diverse from opposing parties only if all of the members of the LLC are citizens of different states than all opposing parties." *Dunmann Realty, LLC v. Faust*, 2013 U.S. Dist. Lexis 1127, at *4 (S.D.N.Y. Jan. 3, 2013). Therefore, "[w]here a member of an LLC sues the LLC, that member's citizenship [must be] taken into account for the purposes of determining the LLC's membership." *Hai Yang Liu v. 88 Harborview Realty, LLC*, 5 F. Supp. 3d 443, 450 (S.D.N.Y. 2014). Consequently, a plaintiff who is a member of a limited liability company cannot bring a diversity action against the limited liability company. *Id.*; *see also Keith v. Black Diamond Advisors, Inc.*, 48 F. Supp. 2d 326, 330 (S.D.N.Y. 1999).

Where jurisdictional facts are disputed, the Court has the power and the obligation to consider matters outside the pleadings such as affidavits, documents, and testimony to determine whether jurisdiction exists. *See Filetech S.A. v. Fr. Telecom S.A.*, 157 F.3d 922, 932 (2d Cir. 1998); *Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986).

Here, diversity jurisdiction is the sole basis in which jurisdiction is conferred on this Court, yet complete diversity of citizenship lacks. Plaintiffs fail to allege the members, let alone the members' citizenship, of FashionBoss. Such a failure is, in and of itself, fatal to diversity jurisdiction because Plaintiffs are required to allege the citizenship of all members of FashionBoss. *See Handelsman*, 213 F.3d at 51–52.

More importantly, since Mr. Salameno owned an interest in FashionBoss with an expectation of receiving a return on his investment, Florida law deems him to be member of FashionBoss. Pursuant to Florida Statute § 608.402(23) (2013), a "membership interest" in a limited liability company "means a member's share of the profits and the losses of the limited liability company, the right to receive distributions of the limited liability company's assets, voting rights, management rights, or any other rights under this chapter or the articles of organization or operating agreement." Moreover, membership interest in an LLC need not be included in an operating agreement because Florida law does not require a written operating agreement for each limited liability company. *See* Fla. Stat. § 605.0102(45) (2015); Fla. Stat. § 608.402(24) (2012). Where an LLC has no operating agreement, "[m]anagement [is] vested in its members . . . in proportion to the then-current percentage or other interest of members in the profits of the [LLC]." *See Froonjian v. Ultimate Combatant, LLC*, 169 So. 3d 151, 154-55 (Fla. 4th DCA 2015).

Defendants' position that Mr. Salameno is a member of FashionBoss is confirmed by the fact that he admitted in the Complaint to an investment in FashionBoss in exchange for a membership interest in FashionBoss (Compl. ¶ 40), as well as the fact that the June 2016 Term Sheet names Mr. Salameno "and/or his assignee" as a member of FashionBoss (and a shareholder in SmartBoss). *See* Decl. Ex. J. Penny Black's representative, Ms. Acosta, also testified that Mr.

Salameno and the Penny Black entities each invested in FashionBoss with the expectation that they would maintain a 33% ownership and membership interest therein. *See* Decl. ¶ 40.

Furthermore, Plaintiffs allege that they had information and inspection rights, as well as a right to receive an accounting for the companies. Compl. ¶¶ 73-74. Under Florida Law, those rights are only available to members of a limited liability company, upon which Plaintiffs base their entitlement. *See* Fla. Stat. § 605.0410 (2019). When Plaintiffs allege to have made "regular payments of funds" to FashionBoss, in reality Mr. Salameno and Penny Black made contributions to the limited liability company pursuant to Florida law as they were members of the company. *See* Fla. Stat. § 605.0402.

Finally, because Ms. Rawlings, in her capacity as managing member of FashionBoss, approved all actions taken by FashionBoss prior to June 10, 2016, such constitutes written acknowledgement that FashionBoss formally admitted Mr. Salameno as well as the Penny Black entities as members. *See* Decl. Ex. K.

For these reasons, the parties to this action are not diverse, and the Court must dismiss the Complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

**B. Plaintiffs Have No Individual Standing to Sue for Alleged Harm to FashionBoss and SmartBoss, and Mrs. Salameno Has No Standing Because She Has Not Suffered an Injury.**

This Court must also dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of standing because (1) Plaintiffs' claims are improper and *in arguendo* must be brought derivatively on behalf of the entity Defendants, and (2) Mrs. Salameno has not suffered an injury in fact upon which to confer her individual standing in this action.

A plaintiff seeking to maintain an action in federal court is "always required" to have standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The issue of standing is "the

threshold question in every federal case, determining the power of the court to entertain the suit." *Kiryas Joel Alliance v. Vill. Of Kiryas Joel*, 495 F. App'x 183, 188 (2d Cir. 2012).

Because SmartBoss is a Delaware corporation, it is controlled by Delaware law regarding standing to sue. Under Delaware law, Plaintiffs have no standing to assert individual claims for damages that implicate all shareholders of SmartBoss. "[T]o have standing to sue individually, rather than derivatively on behalf of the corporation, the plaintiff must allege more than an injury resulting from a wrong to the corporation." *Moran v. Household Int'l, Inc.*, 490 A.2d 1059, 1070 (Del. Ch. 1985), aff'd, 500 A.2d 1346 (Del. Supr. 1985). For a plaintiff to have standing to bring an individual action, he or she must be injured directly or independently of the corporation. *See Bokat v. Getty Oil Co.*, 262 A.2d 246, 249 (Del. Supr. 1970).

Because FashionBoss is a Florida limited liability company, it is controlled by Florida law regarding standing to sue. Plaintiffs similarly have no individual standing to bring an action against FashionBoss under Florida law. *See, e.g.*, *Home Title Co. of Md. v. LaSalla*, 257 So. 3d 640, 643 (Fla. 2nd DCA 2018) ("Generally, a shareholder of a corporation or a member of an LLC may not maintain an action in his or her own right if the cause of action is derived from the right of the corporation or the LLC to bring the action.").

For good measure, Plaintiffs have no standing to sue under New York law as well. *See, e.g.*, *Fraternity Fund Ltd. v. Beacon Hill Asset Mgmt. LLC*, 376 F. Supp. 2d 385, 408 (S.D.N.Y. 2005) ("a shareholder may not bring an action on his own behalf for a wrong against a corporation, even where the alleged wrong adversely affects the value of his shares"); *Abrams v. Donati*, 66 N.Y.2d 951, 953 (1985) (observing that "[f]or a wrong against a corporation a shareholder has no individual cause of action. . . ."). By contrast, a shareholder may sue individually "when the wrongdoer has breached a duty owed to the shareholder independent of any duty owing to the

corporation wronged." *Fraternity Fund Ltd.*, 376 F. Supp. 2d at 408. However, "[a]llegations of mismanagement or diversion of assets by officers or directors to their own enrichment, without more, plead a wrong to the corporation only, for which a shareholder may sue derivatively but not individually." *Abrams*, 66 N.Y.2d at 953.

In the Complaint, Plaintiffs do not assert derivative claims for breach of fiduciary duty against Ms. Rawlings on behalf of FashionBoss or SmartBoss and thus lack standing to bring direct claims against her arising out of her management of either entity. Plaintiffs' claims, which seek damages for a loss of their investment due to the alleged mismanagement and/or diversion of assets by Ms. Rawlings to her own enrichment as the managing member of FashionBoss and as an officer of SmartBoss, fit squarely within the definition of an alleged harm to the corporation as a whole rather than a direct injury to the individual member of shareholder. Thus, Plaintiffs' claims in their individual capacity are improper and must be dismissed for lack of standing.

Moreover, Mrs. Salameno has no standing to assert a claim on her own behalf because she was never a party to any contract with any of the Defendants and was never an investor, member or shareholder in FashionBoss and SmartBoss (*see* Decl. Ex. L at 43:08-20), and thus did not suffer any injury for which to impute standing upon her in this action. *See Lujan*, 504 U.S. at 560 (to maintain standing, "the plaintiff must have suffered an injury in fact. . . .").

For these reasons, the Court must dismiss the Complaint pursuant to Rule 12(b)(1).

## II.     DISMISSAL IS REQUIRED PURSUANT TO RULE 12(B)(7) BECAUSE PENNY BLACK IS AN INDISPENSIBLE PARTY

The Penny Black entities are necessary parties to this action pursuant to Fed. R. Civ. P. 12(b)(7) and 19(a) because Plaintiffs seek damages on their behalf.

Rule 12(b)(7) allows a party to move for dismissal for failure to join a party under Rule 19. Fed. R. Civ. P. 12(b)(7). Rule 19 provides that "[a] person who is subject to service of process and

whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if . . . that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). That rule also provides that "[i]f a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). Rule 19 further provides that a party must be joined if "disposing of the action in the [party's] absence may . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a)(1)(B)(ii).

Here, the Penny Black entities are members of FashionBoss pursuant to Florida law because they invested in the company in exchange for an ownership interest therein. *See* Fla. Stat. § 608.402(23) (2013); *see also* Decl. ¶ 40. Plaintiffs' failure to include the Penny Black entities as parties in the instant action would subject Defendants to the substantial risk of incurring incomplete relief as well as risk exposing them to double obligations, a concern of Fed. R. Civ. P. 19(a)(1)(B)(ii), since Plaintiffs are seeking to recover damages on behalf of Penny Black without naming it as a party to the present action. If the named Plaintiffs are permitted to prosecute this action, there is no protection for Defendants from later being sued by the Penny Black entities. The fact that Penny Black would subsequently be able to bring separate and independent claims based upon the same facts and allegations asserted in the present action, seeking essentially the same damages that are being sought here, means that if the action proceeds without Penny Black, and the present Plaintiffs are successful, Defendants would remain subject to multiple obligations on the same claim. *See Smith v. Kessner*, 183 F.R.D. 373, 375 (S.D.N.Y. 1998); *Rose v. Simms*, 1995 WL 702307, at *6 (S.D.N.Y. Nov. 29, 1995); *Avon Cosmetics (FEBO) Ltd. V. New Hampton, Inc.*, 1991 WL 90808 at *4 (S.D.N.Y. May 22, 1991).

For these reasons, the Court must dismiss the Complaint pursuant to Rule 12(b)(7).

## III. THE COMPLAINT FAILS TO STATE A CAUSE OF ACTION AND MUST BE DISMISSED PURSUANT TO RULE 12(B)(6)

### A. Legal Standard for Rule 12(b)(6) Motion

Dismissal of the Complaint and its claims is appropriate pursuant to Fed. R. Civ. P. 12(b)(6) because Plaintiffs failed to state a cause of action for fraud, breach of contract, or an accounting.

Rule 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). *In Bell Atlantic Corp. v. Twombly*, the Supreme Court explained that a complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.* The allegations must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Allegations that demonstrate only the "mere possibility of misconduct" are insufficient. *Id.* While a court must accept as true the facts alleged in the complaint, a court need not accept as true legal conclusions asserted in the complaint. *Id.*

Rule 9(b) modifies the liberal pleading standard normally used in motions to dismiss when the complaint raises claims of fraud. *See* Fed. R. Civ. P. 9(b). While Rule 8(a) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff asserting fraud must "state with particularity the circumstances constituting fraud or mistake." *Id*.

Rule 9(b) is satisfied when the complaint specifies "the time, place, speaker, and content of the alleged misrepresentations;" how the misrepresentations were fraudulent; and the details that "'give rise to a strong inference that the defendants had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth.'" *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) (quoting *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001)).

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the Complaint, documents that the Plaintiffs relied on in bringing suit and that are either in the Plaintiffs' possession or that Plaintiffs knew of when bringing suit, or matters of which judicial notice may be taken. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002). "In most instances where this exception is recognized, the incorporated material is a contract or other legal document containing obligations upon which the plaintiff's complaint stands or falls, but which for some reason—usually because the document, read in its entirety, would undermine the legitimacy of the plaintiff's claim—was not attached to the complaint." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). Finally, for the Court to consider documents outside of the complaint, there must be "no dispute [] regarding the authenticity or accuracy of a document" and "no material disputed issues of fact regarding the relevance of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).

### B. <u>Plaintiffs Fail to State a Claim for Common-Law Fraud.</u>

In order to plead fraud under New York law, Plaintiffs must allege (a) a material misrepresentation or omission of fact; (b) Defendants' knowledge of the falsity of the statement; (c) intent to defraud; (d) reasonable reliance by the Plaintiffs; and (e) damages. *See Crigger v.*

*Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006). Because the claim is for fraud, it must satisfy the heightened pleading requirements of Rule 9(b). *See Cohen*, 711 F.3d at 359.

In order to survive a motion to dismiss under Rule 12(b)(6), "[p]laintiffs must state facts sufficient to 'give rise to a strong inference of fraudulent intent.'" *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec.*, *LLC*, 797 F.3d 160, 176 (2d Cir. 2015) (citations omitted). "An inference is 'strong' if it is 'cogent and at least as compelling as any opposing inference one could draw from the facts alleged.'" *Id.* at 176-77 (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 324 (2007)). "A fraud plaintiff may establish a 'strong inference' of scienter, among other ways, 'by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" *Id.* at 177. In making this determination, the Court must "consider the complaint in its entirety and 'take into account plausible opposing inferences.'" *Stratte–McClure v. Morgan Stanley*, 776 F.3d 94, 106 (2d Cir. 2015) (quoting *Tellabs*, 551 U.S. at 323). The Second Circuit has also stated that this standard that applies to allegations of scienter against corporate defendants. *See Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital Inc*., 531 F.3d 190 (2d Cir. 2008) ("When the defendant is a corporate entity, this means that the pleaded facts must create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter.").

Here, the Complaint utterly fails to allege any false or fraudulent statements made by Defendants nevertheless provide Defendants with sufficient notice of the nature of their alleged fraud. Although the Complaint asserts that Plaintiffs <u>believe</u> that Defendants have engaged in fraud, the Complaint fails to identify any specific statements alleged to be fraudulent based on credible information rather than rampant speculation. *See, e.g.*, Compl. ¶ 2 ("***On information and belief***, these claims were false.") (emphasis added); Compl. ¶ 31 ("***On information and belief***,

Rawlings used a portion of the funds for her purported business . . . and used the remainder of the funds for her own personal and social expenses.") (emphasis added). Plaintiffs fail to allege any specific information to demonstrate the manner in which any statements by Ms. Rawlings were false, or what funds Ms. Rawlings improperly used as well as the "personal and social expenses" Ms. Rawlings incurred. The balance of Plaintiffs' allegations are simply threadbare, conclusory assertions that the Defendants engaged in a "long-con." Thus, Plaintiffs have not placed Defendants on notice and pleaded their fraud claim with sufficient particularity and the Complaint must be dismissed pursuant to Rule 9(b).

Further, even if the Complaint provides sufficient notice of alleged fraud, which it does not, Plaintiffs fail to allege scienter. To demonstrate scienter, Plaintiffs must show that Defendants had knowledge of the falsity of the statement and an intent to defraud. *Crigger*, 443 F.3d at 234. While knowledge and intent "may be alleged generally," under the pleading standard of Rule 9(b), a court "must not mistake the relaxation of Rule 9(b)'s specificity requirement regarding condition of mind for a license to base claims of fraud on speculation and conclusory allegations." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 52 (2d Cir. 1995)).

Here, the Complaint has not alleged any circumstances to establish an inference of scienter on the part of the Defendants. For instance, the Complaint lacks any allegations to support an inference that the Defendants had knowledge of the purported falsity of their statements. Plaintiffs also fail to allege sufficient facts that would adequately support an inference that Defendants had a motive or an opportunity to act fraudulently, particularly since the investments were disbursed haphazardly over a five year period (2013-17) and Plaintiffs admit that Ms. Rawlings routinely maintained communications with Plaintiffs throughout this time. See Decl. Ex. A 26, 32-36.

Because Plaintiffs have failed to adequately allege scienter, the fraud claim against Defendants must be dismissed pursuant to Rule 12(b)(6) and the Court need not consider whether Plaintiffs have adequately pleaded the other elements of their fraud claim.

Lastly, to the extent that Plaintiffs are seeking damages for purported fraudulent statements made by Ms. Rawlings to induce Mr. Salameno to enter into an investment agreement on April 1, 2013, and to concurrently provide FashionBoss with a $50,000 disbursement in accordance therewith, such claim would be subject to a statute of limitations defense, as such agreement was entered into more than six (6) years before Plaintiffs filed their Complaint on May 15, 2019. *See* N.Y. C.P.L.R. § 213(8) (actions based on fraud must be commenced six years from the date the cause of action accrued). Thus, any theory of fraud arising from representations made by Ms. Rawlings to allegedly induce Mr. Salameno (and Penny Black) to enter into said agreement on April 1, 2013 is time-barred.

### C. <u>Plaintiffs Fail to State a Claim for Breach of Contract.</u>

To state a breach of contract claim under New York law, Plaintiffs must allege (a) the existence of a contract, (b) a breach of the contract, and (c) damages resulting from the breach. *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 494 (S.D.N.Y. 2002). "To show that an enforceable contract existed, the claimant must plead facts surrounding the formation of the contract such as the date the parties entered into the contract, the major terms of the contract, the parties to the contract, and that the party to be bound assented to the contract." *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 412 (S.D.N.Y. 2009). In addition to alleging the existence of a contract, Plaintiffs must "identify the specific provision of the contract that was breached as a result of the acts at issue." *Wolff*, 210 F. Supp. 2d at 494. Further, "[a] claim for breach of contract must rest on more than a conclusory allegation that the defendant's breach

caused damages, even where the exact amount of damages is alleged." *Miller v. HSBC Bank USA, N.A.*, 2015 WL 585589, at *4 (S.D.N.Y. Feb. 11, 2015).

At the outset, Ms. Rawlings personally is not a named party to the June 2016 Term Sheet and is not bound under the agreement, as she signed such only on behalf of SmartBoss. *See* Decl. Ex. J. Only Mr. Salameno and SmartBoss are named as parties and there is no language in the June 2016 Term Sheet to demonstrate that its terms were enforceable against Ms. Rawlings in her individual capacity. *See Brown v. Caldarella*, 2008 U.S. Dist. Lexis 25918 *7 (S.D.N.Y. Mar. 31, 2008) ("The parties to a contract are not determined by the signature line alone but by the text of the contract itself.").

Notwithstanding Defendants' general concession that Mr. Salameno and Penny Black are investors in FashionBoss and SmartBoss, Defendants contend that the June 2016 Term Sheet is not enforceable because it was neither executed by Mr. Salameno nor delivered to any of the Defendants until after this action was commenced. *See* Decl. ¶ 36. The agreement, even though appears to be signed now, was sent electronically by Mr. Rawlings for an electronic signature to Mr. Salameno, who never executed it nor returned it to any of the Defendants or their agents in any manner. *Id.*

In addition to the fact that the June 2016 Term Sheet was never executed by Mr. Salameno in a contemporaneous manner and/or delivered to any of the Defendants, the Complaint sets forth no specific facts demonstrating that (1) Ms. Rawlings and SmartBoss did not use the proceeds of Mr. Salameno's or Penny Black's investment for SmartBoss's working capital needs; (2) that Ms. Rawlings was not responsible for the day-to-day operations of SmartBoss; or (3) that Ms. Rawlings and SmartBoss denied Mr. Salameno standard information and inspection rights. Other than unsubstantiated conclusions, the Complaint is simply bereft of any facts demonstrating such

breaches. Thus, Plaintiffs have failed to state a plausible breach of contract claim. *See Ashcroft v. Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient to withstand a motion to dismiss.).

Moreover, Plaintiffs' allegations that Ms. Rawlings and SmartBoss (1) failed to communicate with Mr. Salameno for a months-long period of time; (2) deprived Mr. Salameno of standard inspection rights; and/or (3) did not issue stock certificates to Mr. Salameno, do not permit a plausible inference that such acts resulted in a loss of Mr. Salameno's investment. In addition, there are no allegation in the Complaint that Ms. Rawlings or SmartBoss refused to recognize Mr. Salameno as a shareholder in SmartBoss or denied him any rights as a shareholder.

For these reasons, the Court must grant Defendants' motion to dismiss Plaintiffs' breach of contract claim.

### D. Plaintiffs Fail to State a Claim for an Accounting.

Finally, Plaintiffs are not entitled to an accounting of SmartBoss. Under New York law, "[t]he right to an accounting is premised upon the existence of a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking the accounting has an interest." *Ctr. For Rehabilitation and Nursing at Richwood, LLC v. S & L Birchwood LLC*, 92 A.D.3d 711, 713 (2d Dep't 2012); *Scirica v. Colantonio*, 2013 WL 4767374 (N.Y. Sup. Ct. Aug. 29, 2013). Under normal circumstances, where there is no obvious fiduciary relationship, an accounting should not be granted. *See Elghanian v. Elghanian*, 277 A.D.2d 162, 162 (1st Dep't 2000).

Here, Plaintiffs do not allege a confidential or fiduciary relationship between any of the parties or a breach of fiduciary duty. Accordingly, Plaintiffs accounting claim must be dismissed pursuant to Rule 12(b)(6).

**CONCLUSION**

For the reasons set forth above, Defendants respectfully request that the Court grant the

instant motion and dismiss Plaintiffs' Complaint in its entirety.

Dated: October 2, 2019
New York, New York

Respectfully submitted,

DAVIDOFF LAW FIRM, PLLC

*J/M/D*

Jonathan M. Davidoff, Esq. (#JD9157)
*Attorneys for Defendants*
228 East 45th Street, Suite 1700
New York, NY 10017
Tel:  212-587-5971
Email:  jonathan@davidofflawfirm.com

MCLOUGHLIN, O'HARA, WAGNER
& KENDALL, LLP

*G/A/K*

Glen A. Kendall, Esq. (#GK0285)
*Attorneys for Defendants*
250 Park Avenue, 7th Floor
New York, New York 10117
Tel:  212-920-6695
Email: gkendall@mowklaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THIS 2nd day of October, 2019, that a copy of the foregoing Motion to Dismiss was emailed to counsel for the Plaintiffs and served via ECF on all parties to this action.

MCLOUGHLIN, O'HARA, WAGNER
& KENDALL, LLP

*G/A/K*

Glen A. Kendall, Esq. (#GK0285)
*Attorneys for Defendants*