UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THERESA SALAMENO, Individually and
on Behalf of the Estate of Lawrence
Salameno,

                Plaintiffs,

       - against -

BRITTANY RAWLINGS,
SMARTBOSS, INC., and
FASHIONBOSS LLC,

                Defendants.

**ORDER**

19 Civ. 4442 (PGG) (BCM)

PAUL G. GARDEPHE, U.S.D.J.:

        In this action, Plaintiffs Lawrence and Theresa Salameno assert claims for breach of contract, fraud, and an accounting against Defendants Brittany Rawlings, SmartBoss, Inc., and FashionBoss LLC.[1]  (Cmplt. (Dkt. No. 1) ¶¶ 55-75)  Defendants moved to dismiss (Dkt. No. 44) and for Rule 11 sanctions (Dkt. No. 53).  This Court referred Defendants' motions to Magistrate Judge Barbara Moses for a Report and Recommendation ("R&R").  (Dkt. Nos. 52, 59)  Judge Moses has issued a 47-page R&R recommending that this Court dismiss Plaintiffs' fraud claim and claim for an accounting, dismiss in part Plaintiffs' breach of contract claim, and administratively close Defendants' Rule 11 sanctions motion.  (Dkt. No. 76)  For the reasons stated below, Defendants' motion to dismiss will be granted in part and denied in part, and Defendants' motion for sanctions will be denied without prejudice.

---

[1]  Lawrence Salameno died after the pending motion was fully briefed, and his estate has been substituted as a plaintiff.  (Dkt. No. 72)  For ease of reference, this Order will refer to Mr. Salameno as a plaintiff and to the couple as "Plaintiffs."

## BACKGROUND

### I.    FACTS

At all relevant times, Lawrence and Theresa Salameno were married residents of New Jersey and well-known philanthropists.  (Cmplt. (Dkt. No. 1) ¶ 12)

In or about 2013, Defendant Brittany Rawlings became acquainted with the Salamenos, and she began "soliciting" financial support from them for her startup business, FashionBoss, which she described as a "fashion business consulting company" that served as "'a comprehensive educational resource and digital tool for creative entrepreneurs' who were fashion designers."  (Id. ¶ 19, 22)  According to Rawlings, FashionBoss was following a business model that had proven successful for other websites.  (Id. ¶ 25)  She presented herself as a lawyer and an entrepreneur operating a profitable startup, and told Plaintiffs that "she had devoted her entire life and savings to FashionBoss."  (Id. ¶¶ 22, 25)  In regular emails to and meetings with the Salamenos, Rawlings described her business plans.  (Id. ¶¶ 23-24)

Persuaded by Rawlings' pitch, the Salamenos began sending money to Rawlings in or about January 2014.  (Id. ¶ 26)  Rawlings told the Salamenos that she would use their money "for the business of FashionBoss," including to cover expenses for numerous videos that would be displayed on the FashionBoss website.  (Id. ¶ 27)  By the end of 2014, the Salamenos had provided Rawlings with $170,000.  (Id. ¶ 26)

Although the Salamenos repeatedly asked to see examples of the finished videos that had been prepared for the FashionBoss website, Rawlings never provided them.  (Id. ¶ 28) In or about 2014, she told the Salamenos that she had launched the FashionBoss website, but that it was in "'beta testing.'"  (Id. ¶ 29)  As a result, "FashionBoss did not yet have paying clients or any revenue."  (Id.)  Although Rawlings claimed that the website would generate "substantial

revenue . . . once beta testing was complete[,]" the website "remained in 'beta' mode, and FashionBoss generated no revenue." (Id. ¶¶ 29-30)

Plaintiffs further allege that Rawlings never followed through with the FashionBoss business plan that she had described to them, and that she used only a portion of their money for FashionBoss business expenses, spending the rest on "personal and social expenses." (Id. ¶¶ 30-33)

In or about 2016, Rawlings told the Salamenos that she was pursuing a different business plan for a new start-up – "SmartBoss, Inc." (Id. ¶ 34) She described SmartBoss as an artificial intelligence-based "'software and management platform where entrepreneurs and freelancers can benefit from a software that thinks and acts like an executive team.'" (Id.) In emails and in meetings, Rawlings again solicited the Salamenos for money. (Id. ¶ 35) In order to induce the Salamenos to invest in her new venture, Rawlings told them

      a.   that identified other investors would invest in SmartBoss after a lead investor, i.e. the Salamenos, committed to invest hundreds of thousands of dollars;

      b.   that she had scheduled meetings with three venture capital funds;

      c.   that SmartBoss's "current valuation is around $10 million";

      d.   that Rawlings' mother, a Florida attorney, had invested $10,000;

      e.   that SmartBoss had a chief operating officer, lead developer, and numerous other employees, including interns and contractors, and a data scientist consultant;

      f.   that Rawlings was building an interactive website, and in doing so had "implemented a zero-bug environment, which means we do not build or improve features until all critical, foundational features are completed"; [and]

      g.   that she and others with whom she was working had made "tremendous progress," with results that work "like magic."

(Id.)

On April 4, 2016, Rawlings told the Salamenos that the SmartBoss website would launch the following month.  (Id. ¶ 36)  She also claimed that venture capital investors were willing to make a "seed investment" in SmartBoss after a lead investor committed $200,000.  (Id.)  The Salamenos sent Rawlings an additional $230,000 on or about April 11, 2016.  (Id. ¶ 37)  By June 2016, the Salamenos had provided Rawlings with $500,000.  (Id. ¶ 38)

On or about June 10, 2016, Rawlings and Lawrence Salameno executed an agreement entitled "Smartboss Inc. Terms of Issuance of Series Seed Preferred Stock" (the "SmartBoss Contract").  (Id. ¶ 39)  The SmartBoss Contract recounts, inter alia, that Mr. Salameno had previously provided "aggregate proceeds" in the amount of $500,000, of which $260,000 constituted loans and $240,000 constituted investments, "'in connection with the development of the business in FashionBoss, LLC (the "Predecessor").'"  (Id. ¶ 40 (quoting SmartBoss Contract (Dkt. No. 51-2) at 1))  The SmartBoss Contract also states that these "[p]revious loans and investments" in FashionBoss are "converted into Series Seed Shares as provided herein," and that SmartBoss stock will be issued to Mr. Salameno.  (Id. ¶¶ 40-41 (quoting SmartBoss Contract (Dkt. No. 51-2) at 1))  The SmartBoss Contract further provides that the funds supplied by Mr. Salameno will be used for SmartBoss's "'[w]orking capital needs, including salaries, R&D, rent, sales, [and] legal.'"  (Id. ¶ 41 (quoting SmartBoss Contract (Dkt. No. 51-2) at 1))  Finally, the SmartBoss Contract provides that Rawlings is "'responsible for management and day to day operations'" of SmartBoss, and that Mr. Salameno "'will receive standard information and inspection rights' from SmartBoss."  (Id. (quoting SmartBoss Contract (Dkt. No. 51-2) at 2))

4

In or about July and August 2016, Rawlings again solicited the Salamenos for financial support, describing SmartBoss's progress in emails and in a PowerPoint presentation. (Id. ¶ 42)  Rawlings told the Salamenos the following:

    a.  that SmartBoss's "Team" comprised not only Rawlings, but a data scientist and engineer, a chief marketing officer, a data and digital strategist, a chief financial officer, and a chief operating officer;

    b.  that SmartBoss also had a "Dev Team," comprising six educated and credentialed software engineers;

    c.  that SmartBoss was creating an "invite only beta site," and that it had more than a thousand users on it, and had been "collecting their credit cards" in order to later charge them $45 per month on average to use the site;

    d.  that Rawlings had numerous other investors interested in investing in SmartBoss, including five venture capital funds with which she was meeting in September, "the other 8 VCs as well, and the 12 early stage VCs";

    e.  that in 2012 Rawlings had made a $100,000 investment;

    f.  that in 2013 to 2015 Rawlings had obtained an investment she called a "Friends and Family Investment:  $1.5M $300,000 [sic] over 24 months in form of Convertible Note"; and

    g.  that her monthly expenses for "developer salaries, patents, and rent" were approximately $50,000.

(Id.)  On September 7, 2016, the Salamenos sent Rawlings another $50,000.  (Id. ¶ 43)

"In or around late 2016 and early 2017, Rawlings' communications with the Salamenos became significantly less frequent."  (Id. ¶ 44)  In a January 5, 2017 email to Rawlings, Mrs. Salameno alluded to this decline in communication:  "We hope everything is ok with you as we have not heard from you in months.  Larry and I have been reaching out to you since early November because we would like to go over the continuing launch and talk about how SmartBoss is growing."  (Id.)  On February 10, 2017, the Salamenos sent $5,000 to Rawlings, and on August 24, 2017, they sent her $6,000.  (Id. ¶ 45)  In or about August 2017,

Rawlings met with the Salamenos and told them "that SmartBoss was going well" and "that the SmartBoss launch would be soon[.]"  (Id. ¶ 46)

After the August 2017 meeting, Rawlings did not communicate again with the Salamenos for approximately a year and a half.  (Id. ¶¶ 47-49)  The Salamenos contacted Rawlings during this period, and asked that she provide information concerning the status of SmartBoss and the money they had provided to her.  Rawlings did not respond.  (Id. ¶¶ 47-48) In an April 2018 email to Rawlings, Ms. Salameno referred to the lack of communication:  "I hope things are well with you and nothing unexpected has happened, either with your health, your family or business, we are very concerned that we have not been able to speak with you in over 8 months."  (Id. ¶ 48)

In a January 27, 2019 letter to the Salamenos, Rawlings apologized for her lack of communication, explaining "that a problem had arisen with a software developer[,]" Toptal LLC: "'[l]ong story short, the developer had caused the software to be open to the world wide web and a "hacker" walked in and took control of the server.'"  (Id. ¶ 49)  As a result, "[Toptal] then quit, and the SmartBoss website never launched."  Rawlings further claimed that she had hired a lawyer to sue Toptal, and "that a lawsuit would be filed shortly[.]"  (Id.)

SmartBoss never issued stock to the Salamenos (id. ¶ 51), and Plaintiffs claim that Rawlings did not "fulfill her responsibility for management and day to day operations of SmartBoss, Inc."  Plaintiffs also claim, "[o]n information and belief," that "Rawlings did not use the entirety of the Salamenos' funds for SmartBoss's working capital needs, including salaries, R&D, rent, sales, and legal, but instead used funds of the Salamenos for personal and social expenses."  (Id. ¶ 53)  Plaintiffs further complain that Rawlings and SmartBoss "did not provide standard information and inspection rights to Lawrence Salameno."  (Id. ¶ 54)

## II.   **PROCEDURAL HISTORY**

The Complaint was filed on May 15, 2019, and alleges breach of contract and fraud.  (Id. ¶¶ 55-69)  Plaintiffs also seek an accounting.  (Id. ¶¶ 70-75)

In a June 20, 2019 letter, Defendants requested a pre-motion conference regarding their contemplated motion to dismiss for lack of subject matter jurisdiction and failure to join a necessary and indispensable party, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(7).  (Dkt. No. 10)  In a July 9, 2019 order, this Court directed the parties to conduct jurisdictional discovery for thirty days, and to then "submit a joint letter setting forth their views as to what jurisdictional discovery revealed."  (Dkt. No. 15)

Disputes arose as to the proper scope of jurisdictional discovery, and on July 29, 2020, this Court referred the case to Magistrate Judge Moses for general pretrial supervision. (Dkt. No. 18)  On August 2, 2019, Judge Moses issued an order limiting jurisdictional discovery to (1) whether Plaintiffs are members of FashionBoss; and (2) whether Penny Black Holdings II, LLC ("Penny Black II"), a Salameno-controlled entity, is a necessary party whose joinder would destroy diversity.  (Dkt. No. 31 at 4)  After Plaintiffs identified a payment to Rawlings from another Salameno-controlled entity, Penny Black Holdings, LLC ("Penny Black I") (together with Penny Black II, the "Penny Black Entities"), they notified Judge Moses that Plaintiffs would construe her August 2, 2020 discovery order to include Penny Black I.  (Dkt. No. 32) Judge Moses then authorized Defendants to depose a representative of the Penny Black Entities, but denied Defendants' request to further expand jurisdictional discovery.  (Dkt. Nos. 34, 40)

On October 2, 2019, Defendants moved to dismiss the Complaint for (1) lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1); (2) failure to join an indispensable party, pursuant to Fed. R. Civ. P. 12(b)(7) and 19(a); and (3) failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).  (Dkt. Nos. 44-46)

Defendants contend that this Court lacks subject matter jurisdiction because (1) there is no diversity of citizenship between the parties; (2) Mrs. Salameno lacks standing to sue for breach of contract; and (3) both Plaintiffs lack standing to bring individual claims against SmartBoss and FashionBoss.  (Def. Br. (Dkt. No. 46) at 8-9, 18-24)[2]

Defendants further contend that they are entitled to dismissal under Fed. R. Civ. P. 12(b)(7) and 19(a), because the Penny Black Entities are indispensable parties, and their joinder would destroy diversity.  (Id. at 24-25)

Finally, Defendants move to dismiss Plaintiffs' breach of contract, fraud, and accounting claims under Fed. R. Civ. P. 12(b)(6), asserting that (1) the SmartBoss Contract is unenforceable, because it was never executed; (2) even if the SmartBoss Contract were enforceable, Plaintiffs do not allege facts demonstrating that Defendants breached the SmartBoss Contract; (3) the Complaint does not adequately allege fraud; and (4) Plaintiffs' accounting claim fails, because they have not alleged "a confidential or fiduciary relationship between any of the parties or a breach of fiduciary duty."  (Id. at 9-11, 26-32)

On October 28, 2019, this Court referred Defendants' motion Judge Moses for an R&R.  (Dkt. No. 52)

On November 5, 2019, Plaintiffs moved for sanctions pursuant to Fed. R. Civ. P. 11.  This Court referred Plaintiffs' sanctions motion to Judge Moses for an R&R.  (Dkt. Nos. 53-55, 59)  On November 8, 2019, Judge Moses stayed further briefing on Plaintiffs' sanctions motion "[i]n light of the overlap in subject matter between that motion and defendants' fully-briefed motion to dismiss."  (Dkt. No. 60)

---

[2]  The page numbers of documents referenced in this Order correspond to the page numbers designated by this District's Electronic Case Files ("ECF") system.

In her September 17, 2020 R&R, Judge Moses recommends that Defendants'

motion to dismiss be granted in part and denied in part:

> Ms. Salameno's individual claim for breach of contract should be dismissed for
> lack of standing, because she is not a party to that contract. Mr. Salameno's
> breach of contract claim (now belonging to the Estate) should be dismissed in
> part, as to the conduct described in paragraphs 57 and 59 of the Complaint (Dkt.
> No. 1), because those paragraphs do not plausibly allege a breach of any
> contractual obligation. Plaintiffs' fraud claim should be dismissed for failure to
> plead facts showing that defendants' alleged representations were false or
> misleading. Defendants' accounting claim should be dismissed because plaintiffs
> do not plead any underlying fiduciary relationship. Leave to replead should be
> granted as to the breach of contract and fraud claims. Defendants' motion should
> otherwise be denied.

(R&R (Dkt. No. 76) at 1-2)

## III.   OBJECTIONS TO THE R&R

Plaintiffs did not file objections to the R&R. On October 9, 2020, Defendants

submitted objections to the R&R in which they contend that

(1) Plaintiffs should not be granted leave to amend their breach of contract and fraud
claims because, inter alia, there is "insurmountable evidence that refutes the breach of
contract (and fraud) claims" (Def. Obj. (Dkt. No. 79) at 5-7);

(2) the R&R "is silent as to the documentary evidence that unequivocally established that
the Plaintiffs' claims of fraud and breach of contract are meritless" (id. at 7-9);

(3) the R&R overlooks evidence submitted in SmartBoss's "lawsuit in Delaware against
its former website developer . . . [which] establish[es] by clear and indisputable
evidence that the Plaintiffs['] claims for fraud and breach of contract are wholly
meritless" (id. at 9-10);

(4) the R&R "overlooks the documentary evidence that Mr. Salameno anticipator[ily]
repudiated the agreement with FashionBoss in 2014" and therefore has "unclean
hands" (id. at 10);

(5) the R&R mistakenly concludes that a check from Mrs. Salameno's bank account had
been sent to Rawlings, and that absent this check "Mrs. Salameno does not have
standing to assert her personal claim for fraud in the inducement" (id. at 10-11);

(6) the R&R errs in concluding that Plaintiffs have standing to bring individual claims
against SmartBoss and FashionBoss (id. at 11-12); and

(7) the R&R incorrectly concludes that Ms. Rawlings executed the SmartBoss Contract in her individual capacity.  (Id. at 13)

## DISCUSSION

## I.      LEGAL STANDARDS

### A.      Review of Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  28 U.S.C. § 636(b)(1)(C).  Where a timely objection has been made to a magistrate judge's recommendation, the district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  Id.  However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'"  Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (quoting Vega v. Artuz, No. 97Civ.3775LTSJCF, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)) (alteration in Phillips).  "To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review the Report strictly for clear error."  Indymac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865(LTS)(GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing Pearson-Fraser v. Bell Atl., No. 01 Civ. 2343(WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003); Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)); see also Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are 'merely perfunctory responses,' . . . 'rehashing . . . the same arguments set forth in the original petition.'") (citing

Vega, 2002 WL 31174466, at *1; Greene v. WCI Holdings, 956 F. Supp. 509, 513 (S.D.N.Y. 1997)).

For portions of the R&R to which no timely objection is made, a court's review is limited to a consideration of whether there is any "'clear error on the face of the record'" that precludes acceptance of the recommendations. Wingate v. Bloomberg, No. 11-CV-188 (JPO), 2011 WL 5106009, at *1 (S.D.N.Y. Oct. 27, 2011) (quoting Fed. R. Civ. P. 72(b) advisory committee note; citing Nelson v. Smith, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985) ("To accept the report and recommendation of a magistrate, to which no timely objection has been made, a district court need only satisfy itself that there is no clear error on the face of the record."))

## B.    Rule 12(b)(1) Standard

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter jurisdiction). . . ." Sinochem Int'l Co. v. Malay. Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  Where subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (quoting Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003)).  "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)[,] a district court may consider evidence outside the pleadings." Morrison v. Nat'l Austl. Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008), aff'd, 561 U.S. 247 (2010) (citing Makarova, 201 F.3d at 113).

In reviewing a Rule 12(b)(1) motion, a court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable

to plaintiffs." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004).  The court

"may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional

issue, but . . . may not rely on conclusory or hearsay statements contained in the affidavits." Id.

A court may also "consider 'matters of which judicial notice may be taken.'" Greenblatt v.

Gluck, 03 Civ. 597 (RWS), 2003 WL 1344953, at *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quoting

Hertz Corp. v. City of New York, 1 F.3d 121, 125 (2d Cir. 1993)).

### C.   **Rule 12 (b)(6) Standard**

"To survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v.

Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

"In considering a motion to dismiss[,] . . . the court is to accept as true all facts alleged in the

complaint[,]" Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 237 (2d Cir. 2007) (citing

Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 87 (2d Cir. 2002)),

and must "draw all reasonable inferences in favor of the plaintiff." Id. (citing Fernandez v.

Chertoff, 471 F.3d 45, 51 (2d Cir. 2006)).

A complaint is inadequately pled "if it tenders 'naked assertion[s]' devoid of

'further factual enhancement[,]'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557),

and does not provide factual allegations sufficient "to give the defendant fair notice of what the

claim is and the grounds upon which it rests[,]" Port Dock & Stone Corp. v. Oldcastle Ne. Inc.,

507 F.3d 117, 121 (2d Cir. 2007) (citing Twombly, 550 U.S. at 555).  "Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice [to

establish an entitlement to relief]." Iqbal, 556 U.S. at 678.

"In considering a motion to dismiss for failure to state a claim pursuant to Rule

12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to

the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco

v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (citing Chambers v. Time Warner,

Inc., 282 F.3d 147, 153 (2d Cir. 2002); Hayden v. Cty. of Nassau, 180 F.3d 42, 54 (2d Cir.

1999)).  "Where a document is not incorporated by reference, the court may never[the]less

consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the

document 'integral' to the complaint." Id. (quoting Mangiafico v. Blumenthal, 471 F.3d 391,

398 (2d Cir. 2006)).

**D.    Rule 9(b) Standard**

"Federal Rule of Civil Procedure 9(b) sets forth a heightened pleading standard

for allegations of fraud[.]" Lerner v. Fleet Bank, N.A., 459 F.3d 273, 290 (2d Cir. 2006).  "In

alleging fraud or mistake, a party must state with particularity the circumstances constituting

fraud or mistake." Fed. R. Civ. P. 9(b).  To satisfy this heightened standard, "'the complaint

must:  (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the

speaker, (3) state where and when the statements were made, and (4) explain why the statements

were fraudulent.'" Lerner, 459 F.3d at 290 (quoting Mills v. Polar Molecular Corp., 12 F.3d

1170, 1175 (2d Cir. 1993)).  While Rule 9(b) provides that "[m]alice, intent, knowledge, and

other conditions of a person's mind may be alleged generally[,]" Fed. R. Civ. P. 9(b), a plaintiff

"must nonetheless allege facts that give rise to a strong inference of fraudulent intent." Loreley

Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 171 (2d Cir. 2015) (internal

quotation marks and citation omitted).  "'The requisite "strong inference" of fraud may be

established either (a) by alleging facts to show that defendants had both motive and opportunity

to commit fraud, or (b) alleging facts that constitute strong circumstantial evidence of conscious

misbehavior or recklessness.'" Lerner, 459 F.3d at 290-91 (quoting Shields v. Citytrust Bancorp,

Inc., 25 F.3d 1124, 1128 (2d Cir. 1994)).

13

II.    **ANALYSIS**

    A.    **Subject Matter Jurisdiction**

        1.    **Whether Complete Diversity Exists Between the Parties**[3]

Defendants contend that the parties are not completely diverse because Mr. Salameno and FashionBoss are both citizens of New Jersey.  (Def. Br. (Dkt. No. 46) at 21)  According to Defendants, FashionBoss is a citizen of New Jersey because, as an LLC, its citizenship "is determined by the citizenship of each of its members[,]"and Mr. Salameno – who is a citizen of New Jersey – was a member of FashionBoss on May 15, 2019, when he filed the Complaint.  (Id. at 20 (citing Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC, 692 F.3d 42, 49 (2d Cir. 2012); Handelsman v. Bedford Vill. Assocs. Ltd. P'ship, 213 F.3D 48, 51-52 (2d Cir. 2000))

As Judge Moses notes, "'[t]he question of whose citizenship constitutes part of the LLC's citizenship is ultimately governed by the law of the state of incorporation,'. . . which in this case [i]s the law of Florida."  (R&R (Dkt. No. 76) at 22 (quoting Dumann Realty, LLC v. Faust, No. 09 Civ. 7651(JPO), 2013 WL 30672 at *2 (S.D.N.Y. Jan. 3, 2013)); id. at 10 (finding that "FashionBoss was an LLC created under the laws of Florida in 2011"))

When Mr. Salameno first invested in FashionBoss in 2013, "Florida law provided that a 'member' of an LLC was a person 'who has been admitted to a limited liability company as a member in accordance with this chapter and has an economic interest in a limited liability company which may, but need not, be represented by a capital account.'"  (Id. at 22-23 (quoting Fla. Stat. § 608.402(21) (repealed 2015) (emphasis in R&R))  Florida law at that time also

---

[3]  Defendants have not objected to Judge Moses's recommendations concerning the diversity of citizenship issue.  (See Def. Obj. (Dkt. No. 79))  Accordingly, this portion of the R&R is reviewed solely for clear error.

provided that "unless the articles of organization or the operating agreement said something different[,] 'no person may be admitted as a member unless a majority-in-interest of the members <u>consent in writing</u> to the admission of the additional member.'"  (<u>Id.</u> at 23 (quoting Fla. Stat. § 608.4232 (repealed 2015) (emphasis in R&R))  Under Florida law, Florida LLCs were required "'to keep at [their] principal office . . . [a] current list of the full names and last known business, residence, or mailing address of all members[.]'"  (<u>Id.</u> (quoting Fla. Stat. § 608.4101(a) (repealed 2015))

In June 2015, Florida amended its LLC membership requirements to provide that "a person could become a member of a Florida LLC '[w]ith the consent of all [of the LLC's] members,' Fla. Stat. § 605.0401(3)(c), whether or not that consent was in writing."  (<u>Id.</u> at 24)  LLCs are "still required to 'keep at [their] principal office . . . [a] current list of the full names and last known business, residence of mailing addresses of each member[.]'"  (<u>Id.</u> (quoting Fla. Stat. § 605.0410(a))  Current Florida law also provides that an LLC member is "a person who has been admitted pursuant to § 605.0401 and '[h]as not dissociated from the company under § 605.0602.'"  (<u>Id.</u> at 24-25 (quoting Fla. Stat. § 605.0102(40))  A person dissociates as a member of an LLC where, "among other things, '[t]here has been a transfer of the person's entire transferable interest in the company,' other than for security purposes or to satisfy a 'charging order' for payment of an unsatisfied judgment."  (<u>Id.</u> (quoting Fla. Stat. § 605.0602(5)(b)))

Here, Defendants contend that Mr. Salameno was a member of FashionBoss LLC because he invested in the company "with an expectation of receiving a return on his investment," and because the SmartBoss Contract "names Mr. Salameno 'and/or his assignee' as a member of FashionBoss (and a shareholder in SmartBoss)."  (Def. Br. (Dkt. No. 46) at 21 (citing SmartBoss Contract (Rawlings Decl. Ex. J. (Dkt. No. 45-10) at 2)))  Defendants further

argue that, to the extent that the SmartBoss Contract grants inspection rights to Plaintiffs, those rights are "only available to members of a limited liability company." (Def. Br. (Dkt. No. 46) at 22) Finally, Defendants contend that when Rawlings executed a June 10, 2016 "Written Action" "in her capacity as managing member of FashionBoss," she "approved all action taken by FashionBoss prior to June 10, 2016," which "constitutes written acknowledgement that FashionBoss [had] formally admitted Mr. Salameno as well as the Penny Black Entities as members." (Id. at 16, 22) (citing Rawlings Decl., Ex. K (Dkt. No. 45-11))

Judge Moses concludes that Defendants have not demonstrated that Mr. Salameno was a member of FashionBoss at the time the Complaint was filed. Judge Moses first notes that "Defendants have not produced [(1)] any written consent to the admission of Mr. Salameno (or either of the Penny Black Entities) as a member of FashionBoss[,]" or (2) any "list of members containing Mr. Salameno's name (or the name of any Penny Black Entity)," as required under Florida law as of 2013.[4] (R&R (Dkt. No. 76) at 23)

Judge Moses goes on to find that she "need not reach th[e] issue" of whether Mr. Salameno became a member of FashionBoss pursuant to the June 2015 amendments to Florida's LLC membership requirements, because "[e]ven if Mr. Salameno was admitted as a member of FashionBoss, he 'dissociated' as such on June 10, 2016, by means of the SmartBoss Contract,

---

[4] Judge Moses also notes "that FashionBoss never issued Mr. Salameno or the Penny Black Entities any Schedule K-1s or other documentation of their interest in the LLC[,]" and that the SmartBoss Contract refers to Mr. Salameno only as a "designee" or as "the Investor," rather than as a "member" of FashionBoss. (Id. at 23-24) And when the SmartBoss Contract converted the $500,000 Mr. Salameno had previously provided to FashionBoss into "'Series Seed Shares' in SmartBoss[,]" "Mr. Salameno . . . no longer ha[d] any 'investment' in FashionBoss, [and] his newly-granted 'standard information and inspection rights' could only refer to rights regarding SmartBoss, which was formed under the laws of Delaware." (Id. at 25 (citing SmartBoss Contract (Rawlings Decl. Ex. J. (Dkt. No. 45-10) at 1))

which 'converted' his FashionBoss investment into Series Seed Shares in SmartBoss."[5]  (Id. at

25)  Judge Moses therefore concludes that Plaintiffs "have satisfied their burden of showing, by a

preponderance of the evidence, . . . that Lawrence Salameno and the Penny Black Entities were

not members of FashionBoss on May 15, 2019 [when Plaintiffs filed the Complaint], and

therefore that FashionBoss was not a citizen of New Jersey on that date."  (Id. at 25-26 (citing

Pearl River Union Free Sch. Dist. v. King, 214 F. Supp. 3d 241, 252 (S.D.N.Y. 2016))

        This Court finds no clear error in Judge Moses's conclusion that complete

diversity exists.

---

[5]  Although Judge Moses does not make a finding as to whether Mr. Salameno became a member of FashionBoss pursuant to the 2015 amendments to Florida's LLC membership requirements, she notes that "the LLC's failure to produce any list of members with Mr. Salameno's name on it, coupled with defendants' failure to issue him a Schedule K-1, mention him in the June 2016 Written Consent that Rawlings – alone – signed, or refer to him as anything other than 'the Investor' in the June 10, 2016 SmartBoss Contract, suggest strongly that Rawlings did not in fact 'consent' to his admission as a member of the LLC," and that therefore Mr. Salameno did not become a member of FashionBoss pursuant to Florida's amended LLC membership requirements.  (Id. at 25)

In finding that Mr. Salameno "dissociated" from FashionBoss LLC on June 10, 2016, when he allegedly entered into the SmartBoss Contract, Judge Moses notes that there is a "dispute of fact" as to when Mr. Salameno countersigned the SmartBoss Contract.  (Id. at 25-26)  If Mr. Salameno did not execute the SmartBoss Contract on June 10, 2016, then he was not definitively dissociated from FashionBoss as of that date.  Mr. Salameno "attests that he executed the document on or about June 10, 2016, 'at [his] home in the presence of Ms. Rawlings and others.'"  "Rawlings denies this, attesting that Mr. Salameno 'did not countersign' the document and that she did not see a fully executed copy until it was produced in jurisdictional discovery." (Id. at 25-26 (citing Salameno Decl. (Dkt. No. 51) ¶ 7; Rawlings Decl. (Dkt. No. 45) ¶ 37)) Defendants contend that because (1) Rawlings sent an electronic version of the SmartBoss Contract to Mr. Salameno so that he could "'easily sign by electronic signature'"; and (2) an "Adobe 'final audit report' show[s] that [Mr. Salameno] never used the EchoSign technology," Mr. Salameno did not execute the SmartBoss Contract on June 10, 2016.  (Id. (citing Rawlings Reply Decl. Ex. N (Dkt. No. 55-14), Ex. O (Dkt. No. 55-15)))  As Judge Moses notes, however, "[t]he fact that Mr. Salameno did not sign the [SmartBoss Contract] electronically . . . says nothing about whether he signed it manually, as he attests."  (Id.)

### 2.      Whether Mrs. Salameno Has Standing

Defendants contend that Mrs. Salameno does not have standing to assert a breach of contract claim, "because she was never a party to any contract with any of the Defendants and was never an investor, member, or shareholder in FashionBoss [or] SmartBoss." (Def. Br. (Dkt. No. 46) at 24))

"In order to allege the necessary 'personal stake in the outcome of the controversy,' . . . each plaintiff who seeks to invoke the jurisdiction of the federal courts must demonstrate an invasion of her own '"legally-protected interest."'" (R&R (Dkt. No. 76) at 27 (quoting Warth v. Seldin, 422 U.S. 490, 498-99 (1975); Kounitz v. Slaatten, 901 F. Supp. 650, 654 (S.D.N.Y. 1995) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992))

Here, Judge Moses concludes that Mrs. Salameno was not a party to the SmartBoss Contract, because "[h]er name does not appear on the SmartBoss Contract," and there is no "claim that Ms. Salameno was a third-party beneficiary, an assignee, or otherwise entitled to any substantive rights under that agreement." (Id. at 27) Accordingly, Judge Moses finds that Mrs. Salameno "lacks standing, in her individual capacity, to sue for breach of the SmartBoss Contract." (Id.)

With respect to Plaintiffs' fraud and accounting claims, however, Judge Moses concludes that Plaintiffs have alleged sufficient facts to demonstrate that Mrs. Salameno has a "'personal stake in the outcome of the controversy.'" (Id. at 28 (quoting Warth, 422 U.S. at 498-99)) Indeed, as Judge Moses notes, the Complaint alleges that Rawlings made "false or misleading statements . . . to both Mr. and Ms. Salameno[,]" and that "Rawlings' statements induced both Mr. and Ms. Salameno to 'give [Rawlings] money.'" (Id. at 28 (citing Cmplt. (Dkt. No. 1) ¶¶ 24, 26-28, 32, 37-38) Plaintiffs have also submitted payment receipts showing that Mrs. Salameno directed funds to FashionBoss from her individual bank account and to

SmartBoss via checks from the Salamenos' joint account.  (Id. (citing Salameno Decl. Ex. A (Dkt. No. 51-1) at 5-7, 10, 12)

In objecting to the R&R's recommendation concerning Mrs. Salameno's standing to pursue a fraud claim, Defendants contend that Judge Moses mischaracterized the evidence relating to Mrs. Salameno's payments to FashionBoss.  (See Def. Obj. (Dkt. No. 79) at 10-11) This Court reviews Defendants' argument de novo.

Defendants complain that the R&R incorrectly references Mrs. Salameno's June 9, 2014 $15,000 investment in FashionBoss twice, and further argue that this June 9, 2014 payment was actually "a payment on behalf of Penny Black in furtherance of Mr. Salameno's obligation."  (Id. at 11)  Whether or not this payment was improperly referenced twice, however, there is no evidence that the June 9, 2014 payment from Mrs. Salameno's individual bank account was made on behalf of Penny Black and in furtherance of Mr. Salameno's obligation. Indeed, the records concerning this June 9, 2014 payment indicate that the money was drawn from the account of Theresa Salameno and made payable to "FashionBoss."  (See Salameno Decl., Ex. A (Dkt. No. 51-1) at 5-7)  And even assuming arguendo that Mrs. Salameno made the June 9, 2014 payment in furtherance of Mr. Salameno's obligation, there are other payments to FashionBoss and SmartBoss that were drawn from the couple's joint bank account.  (See Rawlings Decl., Ex. D (Dkt. No. 45-4); Salameno Decl., Ex. A (Dkt. No. 51-1))[6]

---

[6]  In light of these payments, Defendants vague assertion that "no statement from Ms. Rawlings to [Mrs.] Salameno support[s] a claim for fraudulent inducement, as the investment and due diligence was made by Penny Black" (Def. Obj. (Dkt. No. 79) at 10-11)), does not change the outcome.

Accordingly, this Court will adopt Judge Moses's finding that Mrs. Salameno lacks standing to assert a breach of contract claim, but has standing to assert fraud and accounting claims.

### 3.      Whether Plaintiffs Are Limited to Derivative Claims

Defendants assert that both plaintiffs lack standing to sue FashionBoss or SmartBoss individually, "'rather than derivatively on behalf of the corporation,'" because they seek "damages for a loss of their investment due to the alleged mismanagement and/or diversion of assets by Ms. Rawlings to her own enrichment[.]"  (Def. Br. (Dkt. No. 46) at 22-24) (quoting Moran v. Household Int'l, Inc., 490 A.2d 1059, 1070 (Del. Ch. 1985), aff'd, 500 A.2d 246, 249 (Del. 1970))

Judge Moses concludes that "[b]ecause SmartBoss is a Delaware corporation, Delaware law governs the question whether plaintiffs have standing to bring direct claims against it (and against Rawlings with respect to that entity) as opposed to derivative claims against Rawlings on the corporation's behalf."  (R&R (Dkt. No. 76) at 29 (citing Newman v. Family Mgmt. Corp., 748 F. Supp. 2d 299, 314 (S.D.N.Y.), aff'd, 530 F. App'x 21 (2d Cir. 2013))  Because FashionBoss is a Florida entity, Judge Moses concludes that "Florida law governs the question of plaintiffs' standing to sue FashionBoss (and Rawlings with respect to that entity) directly."  (Id.)

To assert a direct claim against a Delaware corporation, a "'stockholder's claimed direct injury must be independent of any alleged injury to the corporation.'"  (Id. (quoting Tooley v. Donaldson, Lufkin & Jenrette, Inc., 845 A.2d 1031, 1039 (Del. 2004))  In determining whether a stockholder has alleged an independent injury, a court must consider "'solely . . . who suffered the alleged harm . . . and [] who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually).'"  (Id. (quoting Tooley, 845 A.2d at

1033) (emphasis in <u>Tooley</u>))  "Similarly, under Florida law, 'a shareholder of a corporation or a member of an LLC may not maintain an action in his or her own right if the cause of action is derived from the right of the corporation or the LLC to bring the action[,]'" but a plaintiff "may bring the suit directly in his own right" "if the injury is 'separate and distinct from that sustained by other stockholders.'"  (<u>Id.</u> at 29-30 (quoting <u>Home Title Co. of Md., Inc. v. LaSalla</u>, 257 So. 3d 640, 643 (Fla. Dist. Ct. App. 2018); <u>Alario v. Miller</u>, 354 So. 2d 925, 926 (Fla. Dist. Ct. App. 1978))

Noting that "only a member may bring a derivative claim on behalf [of] an LLC, and only a shareholder may do so on behalf of a corporation[,]" Judge Moses concludes that Plaintiffs claims are direct.  (<u>Id.</u> at 30)  In making this determination, Judge Moses notes that "plaintiffs were not members of FashionBoss" and have never "claimed to be shareholders of SmartBoss."  (<u>Id.</u>)  Moreover, the Complaint alleges a breach claim that is based on contractual obligations owed "personally to [Mr. Salameno]," including the obligation to "'issue stock' to him (which would have made him a shareholder) and [to] provide him with 'information and inspection rights.'"  (<u>Id.</u> (quoting Cmplt. (Dkt. No. 1) ¶¶ 60, 61))  Judge Moses further notes that the recovery sought for these breaches – "the return of Mr. Salameno's funds – would benefit only him (not SmartBoss or any other SmartBoss shareholders)."  (<u>Id.</u>)

As to Plaintiffs' fraud claim, Judge Moses finds that it "alleges an archetypically direct injury:  that [Plaintiffs] were induced to part with their money by means of false and/or misleading representations of fact made directly to them by Rawlings on behalf of herself, FashionBoss, and SmartBoss."  (<u>Id.</u> (citing Cmplt. (Dkt. No. 1) ¶¶ 64-67))

Finally, Plaintiffs' accounting claim "seeks to trace 'the use and ultimate disposition of Plaintiffs' funds,' [Cmplt. (Dkt. No. 1)] ¶ 75, rather than redress a wrong done to

either FashionBoss or SmartBoss."  (Id. at 31 (citing In re Palm Ave. Partners, LLC, 611 B.R. 457, 470 n.72 (Bankr. M.D. Fla. 2019))

Judge Moses concludes that "plaintiffs' claims, to the extent they are cognizable, were properly brought directly rather than on behalf of either of the two entity defendants."  (Id. at 32)

There is no clear error in Judge Moses's finding that Plaintiffs have standing to bring direct claims against Defendants SmartBoss and FashionBoss.[7]

### 4.   Whether the Penny Black Entities Are Indispensable Parties

Defendants contend that the Penny Black Entities are indispensable parties whose joinder will destroy diversity.  (Def. Br. (Dkt. No. 46) at 24-25)  According to Defendants, the Penny Black Entities are indispensable parties, because Plaintiffs seek damages on behalf of the Penny Black Entities.  (Id.)  If they are not joined as parties, the PennyBlack Entities "would subsequently be able to bring separate and independent claims based upon the same facts and allegations asserted in the present action, seeking essentially the same damages that are being sought here, . . . [which] would . . . subject [Defendants] to multiple obligations on the same claim."  (Id. at 25)

As Judge Moses states, "[m]otions to dismiss an action for failure to join an indispensable party are disfavored."  (R&R (Dkt. No. 76) at 32 (citing Universal Reinsurance

---

[7]  Although Defendants object to Judge Moses's finding that Plaintiffs have standing to bring direct claims (Def. Obj. (Dkt. No. 79) at 11-12), their objection merely restates arguments they made before Judge Moses.  (Compare id. ("The injury claimed by the Plaintiffs is that Ms. Rawlings 'squandered' the investment funds for personal use[,] . . . [which] is a misappropriation of funds, . . . a claim held by the members of FashionBoss and shareholders of SmartBoss[.]"), with Def. Br. (Dkt. No. 46 at 24 ("Plaintiffs' claims, which seek damages for a loss of their investment due to the alleged mismanagement and/or diversion of assets by Ms. Rawlings . . . fit squarely within the definition of an alleged harm to the corporation as a whole[.]")  Accordingly, Defendants are not entitled to de novo review.

<u>Co.v. St. Paul Fire & Marine Ins. Co.</u>, 312 F.3d 82, 87 (2d Cir. 2002))  The moving party must

establish that (1) "'the absent party is a "party to be joined if feasible" (i.e., a "necessary party")

under Rule 19(a),'" and (2) "the absent party cannot be joined (typically for jurisdictional

reasons) but is so 'indispensable' that the action should, 'in equity and good conscience' be

dismissed."  (<u>Id.</u> (quoting <u>Make Up For Ever, S.A. v. SOHO Forever, LLC</u>, 198 F.R.D. 56, 59-60

(S.D.N.Y. 2000) (quoting Fed. R. Civ. P. 19(a)))  Under Rule 19(a), a party is "necessary" if

"(A) 'in that person's absence the court cannot accord complete relief among existing parties'; or

(B) 'that person claims an interest relating to the subject of the action and is so situated that

disposing of the action in the person's absence may:  (i) as a practical matter impair or impede

the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial

risk of incurring double, multiple, or otherwise inconsistent obligation because of the interest.'"

(<u>Id.</u> at 33 (quoting Fed. R. Civ. P. 19(a)(1))  ""'Inconsistent obligations occur when a party is

unable to comply with one court's order without breaching another court's order concerning the

same incident.""  (<u>Id.</u> (quoting <u>Fed. Ins. Co. v. SafeNet, Inc.</u>, 758 F. Supp. 2d 251, 258

(S.D.N.Y. 2010) (alteration omitted) (quoting <u>Gibbs Wire & Steel Co. v. Johnson</u>, 255 F.R.D.

326, 330 (D. Conn. 2009))

   Judge Moses concludes that Defendants "have not identified any 'inconsistent

obligations' to which they could be subject as a result of the non-joinder" of the Penny Black

Entities, and then goes on to consider whether Defendants face a "risk of double recovery."  (<u>Id.</u>

at 33-34)  Judge Moses finds that the Penny Black Entities could not "sue defendants for breach

of contract because, like Ms. Salameno, they are not parties to the SmartBoss Contract[,]" and

that any suit for fraud would be based on the "misrepresentations made to and relied upon by the

Salamenos[.]"  Accordingly, the Penny Black Entities would be "bar[red] . . . from suing

defendants a second time."  (Id. at 34 (citing Donovan v. Lewnowski, No. 03-CV-2985(DLI)(JO), 2005 WL 2095739, at *6-7 (E.D.N.Y. Aug. 30, 2005); Harding v. Paramount Pictures, No. 12 Civ. 66(DAB)(HBP), 2013 WL 174401, at *7-8 (S.D.N.Y. Jan 16, 2013), report and recommendation adopted, No. 12 Civ. 66(DAB), 2013 WL 1285423 (S.D.N.Y. Mar. 28, 2013))  Judge Moses concludes that the risk of double recovery is "close to nonexistent, and certainly nowhere near 'substantial.'"  (Id.) (citing Fed. R. Civ. P. 19(a)(1)(B)(ii)

Having found that the Penny Black Entities are not necessary parties, Judge Moses notes that even if the Penny Black Entities were indispensable parties, their joinder would not destroy diversity because, like Mr. Salameno, the Penny Black Entities were not members of FashionBoss when the Complaint was filed.  (Id. at 35)

This Court finds no clear error in Judge Moses's finding that the Penny Black entities are not indispensable parties.

**B.      Whether the Complaint Fails to State a Claim under Rule 12(b)(6)**

As discussed above, in moving to dismiss Plaintiffs' breach of contract, fraud, and accounting claims under Fed. R. Civ. P. 12(b)(6), Defendants contend that (1) the SmartBoss Contract is unenforceable, because it was never executed; (2) even if the SmartBoss Contract were enforceable, Plaintiffs do not allege facts demonstrating that Defendants breached the SmartBoss Contract; (3) the Complaint does not adequately allege fraud; and (4) Plaintiffs' accounting claim fails, because they have not alleged "a confidential or fiduciary relationship between any of the parties or a breach of fiduciary duty."  (Def. Br. (Dkt. No. 46) at 26-32)

Judge Moses recommends that Mrs. Salameno's breach of contract claim be dismissed for lack of standing, because she is not a party to the SmartBoss Contract.  (R&R (Dkt. No. 76) at 1-2, 27)  Judge Moses further recommends that Mr. Salameno's breach of contract claim be dismissed to the extent that it is based on allegations that Defendants failed to (1)

24

launch and operate SmartBoss; and (2) communicate with Plaintiffs after August 2017.  (Id. at 2, 39-40)  According to Judge Moses, these allegations are not sufficient to plausibly allege a breach of the SmartBoss Contract.  (Id.)

Judge Moses further recommends that Plaintiffs' fraud claim be dismissed because Plaintiffs have not adequately pled that Defendants' alleged misrepresentations were false or misleading.  (Id. at 2, 41-44)  Finally, Judge Moses recommends that Plaintiffs' claim for an accounting be dismissed, because Plaintiffs have not pled facts demonstrating that a fiduciary relationship existed between Plaintiffs and Defendants.  (Id. at 2, 45-46)

As to leave to amend, Judge Moses recommends that Plaintiffs be granted leave as to their breach of contract and fraud claims, but denied leave to amend as to their accounting claim.  (Id. at 40, 44, 46)

In their objections, Defendants contend, inter alia, that Judge Moses should have recommended that (1) Mr. Salameno's breach of contract claim be dismissed in its entirety; and (2) leave to amend be denied as to Plaintiffs' breach of contract and fraud claims.  (Def. Obj. (Dkt. No. 79) at 5-12)

### 1.     Whether Judge Moses Should Have Considered Documents Outside the Complaint

In arguing that Plaintiffs' breach and fraud claims should be dismissed without leave to amend, Defendants contend that Judge Moses improperly failed to consider documentary evidence that they submitted which "absolutely refute[s]" those claims.  (See Def. Obj. (Dkt. No. 79) at 1-9)  The Court reviews this objection de novo.

As discussed above, in resolving a Rule 12(b)(6) motion, a court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."  DiFolco, 622 F.3d at 111.  "Where a

document is not incorporated by reference, the court may [nevertheless] consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."  Id. (quoting Mangiafico, 471 F.3d at 398)

"[B]efore materials outside the record may become the basis for a dismissal, several conditions must be met.  For example, even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.  It must also be clear that there exist no material disputed issues of fact regarding the relevance of the document."  Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006) (internal citations omitted)  "This principle is driven by a concern that a plaintiff may lack notice that the material will be considered to resolve factual matters."  Nicosia v. Amazon.com, Inc., 834 F.3d 220, 231 (2d Cir. 2016) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 28 (2d Cir. 1991))

Here, Defendants contend that documents disproving Plaintiffs' breach of contract and fraud claims were "cited throughout the memorandum of law in support of the motion to dismiss and other letters and presentations to the Court," but were improperly "overlooked and not considered in" the R&R.  (Def. Obj. (Dkt. No. 79) at 8)  In support of their objections, Defendants submit more than 350 pages of documents, including invoices, payment records, bank statements, receipts, and travel records (see Dkt. Nos. 79-4, 79-5, 79-6, 79-7), as well as the complaint and answer in SmartBoss Inc. v. Toptal LLC, No. N19C-06-130 (SKR) (Del. Super. Ct.) – SmartBoss's lawsuit against Toptal, its former website developer.  (See Dkt. Nos. 79-9, 79-10)

According to Defendants, these documents show that:  (1) Plaintiffs' "investment funds were used to invest in SmartBoss and FashionBoss"; (2) "in SmartBoss's lawsuit against

. . . Toptal, LLC[, Toptal] admitted that it was paid $228,428.74 between the months of June

2016 and August 2017, which represents just less than $2,000 of the Plaintiff's 2016

investment"; (3) "[l]oan holders and other investors contributed to FashionBoss and SmartBoss,

and existed before and after the Salameno[s]"; (4) "[t]he money investment in 2016 was not

induced by any misrepresentation, and was a pre-existing duty from the original Penny Black

investment (thus no additional inducement was needed as the obligation existed)"; and (5)

"Rawlings used her personal funds (unrelated to the entities) for the purported travel to Miami on

a Saturday in February 2016[, and] at such time, Salameno/Penny Black had breached the

investment agreement in 2014 and was before the April 2016 money [sic]."  (Id. at 8-9)

(emphasis in original)

> To the extent that Defendants assert that Judge Moses should have considered
these documents, their objection is overruled.  Defendants do not explain how any of these
documents are "integral" to the Complaint, nor have they demonstrated that it is "clear on the
record that no dispute exists regarding the authenticity or accuracy of the document[s]" and that
there are no "material disputed issue of fact" as to their relevance.  Faulkner, 463 F.3d at 134.
To the contrary, Plaintiffs dispute the authenticity, accuracy, and relevance of these documents.
(See Pltfs. Opp. (Dkt. No. 83) at 10 (arguing that Defendants have submitted "a series of
handpicked, unauthenticated items . . . [which are] not clear, self-explanatory, or demonstrative
of any defense to several of [Rawlings'] breaches of contract, and do not come close to giving a
full accounting of the funds Defendants received nor what they did with those funds"))

> The Court concludes that Judge Moses properly refused to consider the
documents submitted by Defendants in resolving their Rule 12(b)(6) motion.

2.    **Whether the Breach of Contract Claim**
      **<u>Should Be Dismissed in its Entirety</u>**

Judge Moses recommends that Defendants' motion to dismiss be granted as to

Mrs. Salameno's breach of contract claim and as to Plaintiffs' claims that Defendants breached

the SmartBoss Contract by failing to (1) launch and operate SmartBoss; and (2) communicate

with Plaintiffs after August 2017.  (R&R (Dkt. No. 76) at 1-2, 39-40)  This Court sees no clear

error in Judge Moses's recommendations concerning these points.

        In their motion to dismiss, however, Defendants contend that Plaintiffs' breach of

contract claim should be dismissed in its entirety, because Mr. Salameno did not execute the

SmartBoss Contract in 2016, and the alleged contract is thus "not enforceable."  (Def. Br. (Dkt.

No. 46)) at 31)  Defendants further contend that, even if the SmartBoss Contract were

enforceable, "the Complaint sets forth no specific facts demonstrating that" Defendants breached

the SmartBoss Contract.  (<u>Id.</u>)

        A breach of contract claim must allege "the formation of an agreement,

performance by one party, breach of the agreement by the other party, and damages."  <u>Berman v.

Sugo LLC</u>, 580 F. Supp. 2d 191, 202 (S.D.N.Y. 2008) (citing <u>First Inv'rs Corp. v. Liberty Mut.

Ins. Co.</u>, 152 F.3d 162, 168 (2d Cir. 1998))  To adequately allege breach of contract, a complaint

must set forth facts demonstrating "that an enforceable contract existed"; a plaintiff may not rely

on "[c]onclusory allegations that a defendant breached an agreement."  <u>Roberts v. Karimi</u>, 251

F.3d 404, 407 (2d Cir. 2001); <u>Frontline Processing Corp. v. Merrick Bank Corp.</u>, No. 13 Civ.

3956, 2014 WL 837050, at *2-3 (S.D.N.Y. Mar. 3, 2014).

        As to Defendants' argument that the SmartBoss Contract is not enforceable

because it "was 'neither executed by Mr. Salameno nor delivered to any of the Defendants until

after this action was commenced[,]" Judge Moses finds that – although "the parties have

submitted conflicting declarations on this point" – the Complaint "clearly alleges that both 'Rawlings and Lawrence Salameno' signed [the SmartBoss Contract], [Cmplt. (Dkt. No. 1)] ¶ 39, and both copies submitted to the Court are fully executed," which is sufficient at the Rule 12(b)(6) stage. (R&R (Dkt. No. 76) at 38 (citing Salameno Decl., Ex. B (Dkt. No. 51-2); Rawlings Decl., Ex. J (Dkt. No. 45-11)) This Court agrees with Judge Moses' analysis.

In their motion to dismiss, and in their objections, Defendants argue that the breach claim against Rawlings should be dismissed because she is not a party to the SmartBoss Contract, having "signed [the contract] only on behalf of SmartBoss."[8] (Def. Br. (Dkt. No. 46) at 31; Def. Obj. (Dkt. No. 79) at 13)

As an initial matter, this Court agrees with Judge Moses's finding that the SmartBoss Contract may be considered in resolving Defendants' Rule 12(b)(6) motion, because it is incorporated by reference in the Complaint. (See, e.g., Cmplt. (Dkt. No. 1) ¶¶ 39-41; see also DiFolco, 622 F.3d at 111)

The SmartBoss Contract shows that Rawlings "signed the contract on a signature line below which was typed simply, 'Brittany Rawlings.'" (R&R (Dkt. No. 76) at 38 (citing SmartBoss Contract (Dkt. No. 51-2) at 3)) Moreover, the SmartBoss Contract sets forth rights

---

[8] Because Defendants repeat the arguments they made before Judge Moses, this Court reviews the magistrate judge's recommendation only for clear error. Compare (Def. Obj. (Dkt. No. 79) at 13) ("The parties referenced are 'SmartBoss Inc.' and 'Lawrence Salameno' (as investor), and 'Brittany Rawlings (founder [of FashionBoss LLC (predecessor) and SmartBoss Inc.])'. It must be inferred that as the 'Founder' of SmartBoss and FashionBoss, Ms. Rawlings executed the agreement only in this representative capacity, as there is no evidence that she did so in her individual capacity.") (citation omitted) (alteration and emphasis in Def. Obj. (Dkt. No. 79)), with (Def. Br. (Dkt. No 46) at 31) ("At the outset, Ms. Rawlings personally is not a named party to the [SmartBoss Contract] and is not bound under the agreement, as she signed such only on behalf of SmartBoss. Only Mr. Salameno and SmartBoss are named as parties and there is no language in the [SmartBoss Contract] to demonstrate that its terms were enforceable against Ms. Rawlings in her individual capacity.") (citation omitted).

and obligations that are "personal to Rawlings[,]" including that Rawlings would "'serve as the President and Chief Executive Officer of the Company and will be responsible for management and day to day operations, reporting [to] the Company's Board of Directors.'"  (Id. (quoting SmartBoss Contract (Dkt. No. 51-2) at 3) (alteration in R&R))  In sum, this Court sees no error in Judge Moses's finding that Plaintiffs have adequately alleged that Rawlings signed the SmartBoss Contract in her personal capacity.[9]

As to Defendants' argument that the Complaint does not plead a breach of contract claim (Def. Br. (Dkt. No. 46) at 30-32), Judge Moses finds that Plaintiffs adequately allege that Defendants breached the SmartBoss Contract by failing to (1) issue stock to the Salamenos; (2) use Plaintiffs' funds for SmartBoss business purposes; and (3) "provide 'standard information and inspection rights' to Mr. Salameno."  (R&R (Dkt. No. 76) at 38-39 (citing Cmplt. (Dkt. No. 1) ¶¶ 51, 58, 60-61))  In making these findings, Judge Moses notes that Plaintiffs' allegations of breach are supported by citations to contractual provisions that create these obligations.  (Id. at 38-39) (noting that "[t]he SmartBoss Contract contemplated the issuance of 'Series Seed Shares' to Mr. Salameno or his designee equivalent to 24% of the corporation's stock[,]" that it "stated that plaintiff's funds would be used for the company's '[w]orking capital needs, including salaries, R&D, rent, sales, [and] legal,'" and that Rawlings

---

[9]  In their objections, Defendants cite to a June 10, 2016 "written action" by SmartBoss in which SmartBoss purportedly "assumed all responsibility and liability of any pre-incorporator or founder or other corporate acts per the written action."  According to Defendants, this "written action" demonstrates that Rawlings "had no independent obligations to the Plaintiffs" under the SmartBoss Contract.  (Def. Obj. (Dkt. No. 79) at 13 (citing Dkt. No. 45-11))  However, Defendants did not make this argument in their motion to dismiss.  (See Def. Br. (Dkt. No. 46) at 31-32)  "'In this circuit, it is established law that a district judge will not consider new arguments raised in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not.'"  United States v. Gladden, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (quoting Hubbard v. Kelley, 752 F. Supp. 2d 311, 313 (W.D.N.Y. 2009)).  Accordingly, this argument will not be considered.

"failed to respond to a written request that she 'provide, among other things, information about the status of SmartBoss and the loans and investments [Plaintiffs] had provided,'" even though the SmartBoss Contract grants Mr. Salameno "'standard information and inspection rights.'" (Id. at 39 (quoting SmartBoss Contract (Dkt. No. 51-2) at 1); Cmplt. (Dkt. No. 1) ¶¶ 44, 47-48, 51, 53)  This Court finds no error in Judge Moses's analysis of Plaintiffs' breach of contract claim.

In their objections to the R&R, Defendants further argue that Plaintiffs' breach of contract claim should be dismissed because Mr. Salameno has "unclean hands."  (Def. Obj. (Dkt. No. 79) at 10)  Because Defendants could have, but did not, make this argument in their briefing on the motion to dismiss, this Court will not consider it now.[10]  See Gladden, 394 F. Supp. 3d at 480.

In sum, this Court finds no error in Judge Moses's analysis of Plaintiffs' breach of contract claim, and adopts Judge Moses's recommendation that Defendants' Rule 12(b)(6) motion be granted "with respect to the breaches alleged in Complaint paragraphs 57 and 59, and otherwise denied."  (R&R (Dkt. No. 76) at 40)

### 3.  Dismissal of Fraud Claim

In support of Plaintiffs' fraud claim, the Complaint alleges that Defendants

---

[10]  Even if Defendants' unclean hands argument were properly before this Court, it would fail. The doctrine of unclean hands cannot serve as a basis for dismissing Plaintiffs' breach of contract claim, because it is "'an equitable defense to equitable claims' and does not apply to claims that 'seek damages in an action at law.'"  Puebla Palomo v. DeMaio, 403 F. Supp. 3d 42, 61 (N.D.N.Y. 2019) (quoting Aetna Cas. & Sur. Co. v. Aniero Concrete Co., 404 F.3d 566, 607 (2d Cir. 2005)).  Moreover, unclean hands is "'an affirmative defense'" and, as such, "'may [only] be raised by a pre-answer motion to dismiss under Rule 12(b)(6), without resort to summary judgment procedure, if the defense appears on the face of the complaint.'"  McDonald v. Elkholy, 16 CV 2201 (AMD)(LB), 2017 WL 3503385, at *4 (E.D.N.Y. July 27, 2017) (quoting Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 74 (2d Cir. 1998)).  Here, Plaintiffs seek damages, not equitable relief, and the facts supporting Defendants' unclean hand defense do not appear on the face of the Complaint.  (See Cmplt. (Dkt. No. 1))

made "false and fraudulent representations to the Salamenos," either knowingly or recklessly, concerning (a) how plaintiffs' money would be used; (b) "the existence of other interested investors, and the value of SmartBoss"; (c) whether others had made investments in both of Rawlings' businesses; (d) the existence of "numerous" employees, contractors, and other personnel working for the businesses; and (e) the "operation[s]" of FashionBoss and SmartBoss.

(R&R (Dkt. No. 79) at 41 (quoting Cmplt. (Dkt. No. 1) ¶ 65) (alteration in R&R))

In their motion to dismiss, Defendants argue that the Complaint "utterly fails to allege any false or fraudulent statements made by Defendants," and does not "provide Defendants with sufficient notice of the nature of their alleged fraud."  (Def. Br. (Dkt. No. 46) at 21))  Defendants further argue that Plaintiffs have not adequately pled scienter and that their fraud claim is time-barred.  (Id. at 23)

To bring a fraud claim, a plaintiff must plead:  "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff." Crigger v. Fahnestock & Co., 443 F.3d 230, 234 (2d Cir. 2006))[11]  Because Rule 9(b) imposes a heightened pleading standard on fraud claims, the plaintiff must "'specify'" the fraudulent statements, "'identify the speaker . . . state where and when the statements were made, and . . . explain why the statements were fraudulent.'"  United States ex rel. Chorches for Bankr. Estate of Fabula v. Am. Med. Response, Inc., 856 F.3d 71, 81 (2d Cir. 2017) (quoting United States ex rel. Ladas v. Exelis, Inc., 824 F.3d 16, 25 (2d Cir. 2016))

Applying these standards to the Complaint, Judge Moses finds that "while plaintiffs have adequately specified the allegedly fraudulent statements, identified the speaker

---

[11]  Noting that the parties "apply New York law to the fraud claim" and that there is no conflict between New York law and New Jersey law on this point, Judge Moses applies New York law. (R&R (Dkt. No. 76) at 41)

(Rawlings), and (in most instances) stated where and when the statements were made, . . . they have consistently failed to allege facts that explain why (or indeed whether) the statements were false or fraudulent when made." (R&R (Dkt. No. 76) at 41 (citing Cmplt. ¶¶ 27, 29, 32, 35(a)-(g), 36, 42(a)-(g), 46, 49, 64-66)) For example, Judge Moses finds that Plaintiffs failed to allege that Rawlings' statement that she would use the Salamenos' funds "'for the business of FashionBoss to, among other things, produce' educational videos," was false when made, or in other words "'that "there existed an intent not to perform at the time the promise was made."'" (Id. at 42 (quoting Soley v. Wasserman, 823 F. Supp. 2d 221, 235 (S.D.N.Y. 2011) (quoting Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir. 1994) (emphasis in Soley)) Judge Moses reasons that Plaintiffs' factual support for this allegation – that Rawlings "'never provided samples of completed videos' and, 'on information and belief,' used some of the Salamenos' funds 'for her own personal and social expenses'" – does not amount to a claim that Rawlings knew the aforementioned representations were false at the time she made them. (Id. (quoting Cmplt. (Dkt. No. 1) ¶¶ 27-28, 31)

Although Plaintiffs argue that they sufficiently pled scienter by alleging that Rawlings "knowingly made false and fraudulent misrepresentations," this argument – as Judge Moses concludes – does not address the requirement to allege a "present intention not to perform when [the defendant] made [the] alleged promises." (Id. (citing Pltf. Opp. (Dkt. No. 49) at 28-29; Solely, 823 F. Supp. 2d at 235))

Judge Moses also finds that Plaintiffs failed to "plead 'with particularity' that Rawlings misused the funds they provided for personal expenses," because their only concrete allegation in support of this claim is that "Rawlings was photographed attending a party in Miami three days after she emailed Ms. Salameno to say that she was 'back in NY' and would be

meeting with potential investors."  (Id. (citing Cmplt. (Dkt. No. 1) ¶¶ 32-33))  Judge Moses reasons that these allegations only "invite the Court to conclude, from this, not only that Rawlings was untruthful in her email (which does not necessarily follow), but also that she was using their money, rather than personal funds to party in Miami[,]" and that "Rule 9(b) does not permit the Court to take that leap."  (Id.)

Judge Moses concludes that Plaintiffs' "remaining fraud allegations suffer from similar deficiencies."  (Id.)  For example, although Plaintiffs "claim that Rawlings misrepresented 'the existence of other interested investors, and the value of SmartBoss, Inc.,'" the Complaint does not allege "that there were no other interested 'VC investors,' or that the 'current valuation' of SmartBoss in the spring of 2016 was not 'around $10 million."  (Id. At 42-43 (citing Cmplt. (Dkt. No. 1) ¶¶ 65(b), 35(c), 36)  And although Plaintiffs "claim that Rawlings lied about the 'existence of other investments' in FashionBoss and SmartBoss," the Complaint does not "assert that Rawlings' mother did <u>not</u> invest $10,000 or 'commit' another $10,000, . . . or that Rawlings herself did not make a $100,000 investment in 2012."  (Id. at 43 (citing Cmplt. (Dkt. No. 1) ¶¶  35(d), 36 42(e), 65(c)) (emphasis in R&R)

Judge Moses further finds that the Complaint does not plead facts in support of Plaintiffs' assertion that Rawlings' statements about "'the existence of numerous salaried employees, contractors, interns, and consultants' of FashionBoss and SmartBoss" were misleading or false.  (Id. at 43 (quoting Cmplt. (Dkt. No. 1) ¶ 65(d))  Similarly, Plaintiff's allegations regarding "Rawlings' statements about the 'operation[s]' of FashionBoss and SmartBoss" are inadequate, because Plaintiffs do not "allege that those statements were false," and have not offered "supporting facts to demonstrate that Rawlings and her team did not 'complete[] a great deal of work' in March 2016 . . . ; that SmartBoss was not creating an 'invite

only beta site' in July and August of that year; that the site did not have 'more than a thousand users on it'; and/or that SmartBoss was not 'collecting their credit cards.'"  (Id. (quoting Cmplt. (Dkt. No. 1) ¶¶ 36, 42(c))

Based on these findings, Judge Moses recommends that Plaintiffs' fraud claim be dismissed.[12]  (Id. at 44)  This Court finds no error in Judge Moses's analysis of Plaintiffs' fraud claim.  Accordingly, Defendants' motion to dismiss Plaintiffs' fraud claim will be granted.

### 4.   Accounting

In the Complaint, Plaintiffs seek an accounting of the funds that Rawlings "accepted . . . from the Salamenos as loans and investments in FashionBoss, LLC and SmartBoss, Inc.," including "the use and ultimate disposition of Plaintiffs' funds."  (Cmplt. (Dkt. No. 1) ¶¶ 71, 75))  Defendants argue that Plaintiffs' claim for an accounting should be dismissed,

---

[12] "In light of the pleading deficiencies" she identifies, Judge Moses does not reach Defendants' argument that Plaintiffs' fraud claim is barred by New York's six-year statute of limitations for fraud.  (R&R (Dkt. No. 76) at 44 n.23 (citing N.Y.C.P.L.R. § 213(8))).  She notes, however, that while Defendants argue that Plaintiffs' fraud claim is time-barred to the extent it is based on allegations that Plaintiffs were fraudulently induced to "'enter into an investment agreement on April 1, 2013, and to concurrently provide FashionBoss with a $50,000 disbursement in accordance therewith,'" the Complaint does "not allege that [Plaintiffs] entered into an investment agreement on April 1, 2013, nor that they made a $50,000 disbursement 'in accordance therewith.'"  (R&R (Dkt. No. 76) at 44 n.23 (quoting (Def. Br. (Dkt. No. 46) at 30))  Judge Moses further notes that a statute of limitations defense "may be raised on a motion to dismiss only if it 'appears on the face of the complaint,' Bruno v. Casella Waste Sys., Inc., 616 F[ed.] App'x 20, 20 n.1 (2d Cir. 2015) (quoting Ellul v. Congregation of Christian Bros., 774 F.3d 791, 798 n.12 (2d Cir. 2014)), is apparent from documents attached to or integral to the complaint, or arises from 'matters of which judicial notice may [properly] be taken,' Landow v. Wachovia Sec., LLC, 966 F. Supp. 2d 106, 127-28 (E.D.N.Y. 2013)," and that "it is a close question whether the April 1, 2013 check is 'integral to the complaint.'"  (Id.)  Judge Moses advises Plaintiffs that, "[s]hould [they] replead [their fraud] claim, they would be well advised to acknowledge the date of their initial payment and set forth the facts, if any, showing that they did not wait too long to sue for its recovery." (Id.)  This Court sees no error in Judge Moses's analysis and approach.

In their objections, Defendants contend that Plaintiffs' breach of contract claim is "time-barred." (Def. Obj. (Dkt. No. 79) at 6 n.5))  Because this argument was not raised in Defendant's motion to dismiss, Defendant's objection will be overruled.  See Gladden, 394 F. Supp. 3d at 480.

because "Plaintiffs do not allege a confidential or fiduciary relationship between any of the parties or a breach of fiduciary duty."  (Def. Br. (Dkt. No. 46) at 32)

As Judge Moses notes, "'[t]o obtain an accounting under New York law, a plaintiff must show:  "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no legal adequate remedy; and (4) in some cases, a demand for an accounting and a refusal."'"  (R&R (Dkt. No. 76) at 45 (quoting Ellington Credit Fund, Ltd. v. Select Portfolio Servicing Inc., 837 F. Supp. 2d 162, 207 (S.D.N.Y. 2011) (quoting IMG Fragrance Brands, LLC v. Houbigant, Inc., 679 F. Supp. 3d 395, 411 (S.D.N.Y. 2009))  Moreover, "'"[t]he right to an accounting is premised on a confidential or fiduciary relationship and a breach of the duty imposed by that relationship respecting property in which the party seeking an accounting has an interest."'"  (Id. (quoting Ctr. For Rehabilitation & Nursing at Birchwood, LLC v. S & L Birchwood, LLC, 92 A.D.3d 711, 713 (2d Dept. 2012) (quoting Palazzo v. Palazzo, 121 A.D.2d 261, 265 (2d Dept. 1986))

Judge Moses finds that Plaintiffs have not adequately pled a claim for an accounting, because they have not alleged a confidential or fiduciary relationship with any defendant.  (Id.)  Indeed, "Plaintiffs deny that they were members of FashionBoss or shareholders of SmartBoss," and do not "allege any comparable relationship."  (Id.)  Judge Moses further finds that an accounting claim is inappropriate here, because "a portion of Mr. Salameno's contract claim is viable (and plaintiffs may succeed in repleading their fraud claim as well)," and Plaintiffs will therefore "have 'the tools of discovery' . . . to determine 'the use and ultimate disposition of [their] funds.'"  (Id. at 45-46 (quoting IMG Fragrance Brands, 679 F.

Supp. 2d at 411 (alteration in R&R)); Cmplt. (Dkt. No. 1) ¶ 75)  For these reasons, Judge Moses

recommends that Plaintiffs' claim for an accounting be dismissed.

        The Court finds no error in Judge Moses's analysis of Plaintiffs' claim for an

accounting.  Accordingly, Defendants' motion to dismiss will be granted as to Plaintiffs' claim

for an accounting.

        **C.**    <u>**Leave to Amend**</u>

        Judge Moses recommends that Plaintiffs be granted leave to amend their breach

of contract and fraud claims, noting that "there have been no prior amendments of the pleadings,

and . . . at least some of the deficiencies described above could be remedied by amendment."

(R&R (Dkt. No. 76) at 40, 44, 47)  Defendants object to this portion of the R&R, arguing that

any amendment would be futile, "frivolous," and "made in bad faith."  (See Def. Obj. (Dkt. No.

79) at 6-7; Def. Reply (Dkt. No. 86) at 3-6)

        "[I]t is often appropriate for a district court, when granting a motion to dismiss for

failure to state a claim, to give the plaintiff leave to file an amended complaint."  <u>Van Buskirk v.

N.Y. Times Co.</u>, 325 F.3d 87, 91 (2d Cir. 2003) (citing <u>Branum v. Clark</u>, 927 F.2d 698, 705 (2d

Cir. 1991)).  "Leave to amend should be freely granted, but the district court has the discretion to

deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue

prejudice to the opposing party."  <u>Jin v. Metro. Life Ins. Co.</u>, 310 F.3d 84, 101 (2d Cir. 2002)

(citing <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962); <u>Koehler v. Bank of Berm. (N.Y.) Ltd.</u>, 209

F.3d 130, 138 (2d Cir. 2000)).

        Here, granting Plaintiffs leave to amend their breach of contract and fraud claims

is appropriate.  There has been no prior amendment to the Complaint, and this Court cannot find

that the pleading defects discussed above are not subject to cure.  Accordingly, leave to amend is

granted as to Plaintiffs' breach of contract and fraud claims.

As to Plaintiffs' claim for an accounting, Plaintiffs have asserted that they were not members of FashionBoss or SmartBoss.  Accordingly, it is not clear whether Plaintiffs will be able to plead facts demonstrating that they had a confidential or fiduciary relationship with Defendants.  "[T]o allege a fiduciary relationship, four elements are required: '(1) [t]he vulnerability of one party to the other which (2) results in the empowerment of the stronger party by the weaker which (3) empowerment has been solicited or accepted by the stronger party and (4) prevents the weaker party from effectively protecting itself.'"  Gate Techs., 2013 WL 3455484, at *7 (quoting Atlantis Info. Tech., GmbH v. CA, Inc., 485 F. Supp. 2d 224, 231 (E.D.N.Y. 2007) (quotations and citations omitted)).  While Plaintiffs must show more than a "conventional business relationship" in order to allege a fiduciary relationship (see id. (quoting Osan Ltd. v. Accenture LLP, 454 F. Supp. 2d 46, 57 (E.D.N.Y. 2006)), this Court cannot find on the present record that it is impossible for Plaintiffs to do so.

Some courts in this Circuit have dismissed an accounting claim where it is accompanied by a breach of contract (or tort claim) premised on the same facts, on the theory that the plaintiff will "'be able to obtain the information and damages through discovery of his or her breach of contract claim, and thus, he or she has an adequate remedy at law.'"  Najjar Grp., LLC v. West 56th Hotel LLC, No. 14-cv-7120, 2017 WL 819487, at *3 (S.D.N.Y. Mar. 1, 2017) (quoting Associated Mortg. Bankers, Inc. v. Calcon Mut. Mortg. LLC, 159 F. Supp. 3d 324, 340 (E.D.N.Y. 2016)); see also, e.g., Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc., 87 F.3d 44, 49 (2d Cir. 1996) ("Because the plaintiffs have sought money damages in both their breach of contract and conversion claims, and because discovery as to the measure of damages would be available to them if they were to prevail on those claims, they can obtain all the information they seek in their existing claims at law. . . . Accordingly, no useful purpose would

be served by treating the plaintiffs' equitable accounting claim as an additional, and duplicative, action at law."); Ellington, 837 F. Supp. 2d at 207 ("[A]n equitable accounting claim cannot coexist with a breach of contract claim covering the same subject matter.") (citing Physicians Mut. Ins. Co. v. Greystone Servicing Corp., No. 07 CIV. 10490 (NRB), 2009 WL 855648, at *11 (S.D.N.Y. Mar. 25, 2009)).

Other courts have allowed breach of contract and accounting claims to proceed when pleaded in the alternative, or to the extent that the accounting claim is based on conduct constituting the "'breach of a duty arising out of the relationship created by the contract but independent of the contract itself.'"  LaRoss Partners, LLC v. Contact 911 Inc., 874 F. Supp. 2d 147, 167 (E.D.N.Y. 2012) (quoting La Barte v. Seneca Res. Corp., 285 A.D.2d 974 (4th Dept. 2001)); see also Fairfield Fin. Mortg. Grp., Inc. v. Luca, No. 06-CV-5962 (JS)(WDW), 2014 WL 4638950, at *14 (E.D.N.Y. Sept. 16, 2014) ("[Defendant] also argues that the tort claims of conversion and accounting should be dismissed, because they arise from the same facts as the contract claims.  I disagree.  Plaintiffs are free to plead alternative causes of action, and these causes of action are distinct from the breach of the duty of loyalty claim, which arises directly from the contract itself.  The plaintiff, if successful at trial, cannot collect damages for the same harm arising from different causes of action, but these claims can go to trial."); Darlagiannis v. Darlagiannis, 48 A.D.2d 875, 875 (2d Dept. 1975) ("Even though plaintiff may have a legal remedy, she is not precluded from seeking equitable relief by way of an accounting predicated upon the existence of a fiduciary relationship."); cf. Soley v. Wasserman, No. 08 CIV. 9262 KMW FM, 2013 WL 5780814, at *1-2 (S.D.N.Y. Oct. 24, 2013), aff'd, 639 F. App'x 670 (2d Cir. 2016) ("Plaintiff's request for an accounting after trial turns on whether the jury's verdict afforded Plaintiff an adequate remedy at law.").

Here, although Plaintiffs have been granted leave to amend their breach of contract and fraud claims, it is uncertain whether and to what extent these claims will survive. Accordingly, Plaintiffs will be granted leave to amend their accounting claim.

## III.   DEFENDANTS' RULE 11 MOTION

Defendants request that this Court issue a briefing schedule concerning their Rule 11 motion for sanctions, which Judge Moses stayed "in light of the overlap in subject matter between that motion and defendants' fully-briefed motion to dismiss." (See Dkt. No. 60; Def. Obj. (Dkt. No. 79) at 13-16; Def. Reply (Dkt. No. 86) at 6-10)  Defendants assert that their motion should be fully briefed in order to "preserve their right to recover attorney's fees and costs." (Def. Reply (Dkt. No. 86) at 6)  Judge Moses recommends that Defendants' Rule 11 motion "be administratively closed, without prejudice to reopening at the conclusion of this case." (R&R (Dkt. No. 79) at 46 n.24)

In seeking Rule 11 sanctions, Defendants contend that Plaintiffs' claims have no merit, and are refuted by documents Defendants have submitted in connection with their motions to dismiss and for sanctions. (Def. Obj. (Dkt. No. 79) at 13-16; Def. Reply (Dkt. No. 86) at 6-10)

Defendants' Rule 11 motion for sanctions will be denied without prejudice. Plaintiffs' case has survived a motion to dismiss. Moreover, the numerous documents Defendants submitted in support of their motion to dismiss are not properly before the Court, as explained above.

## CONCLUSION

The R&R (Dkt. No. 76) is adopted as set forth above. Defendants' motion to dismiss (Dkt. No. 44) is granted in part and denied in part, as set forth above. Leave to amend is

granted as set forth above.  Defendants' motion for Rule 11 sanctions (Dkt. No. 53) is denied

without prejudice.  The Clerk of Court is directed to terminate the motions (Dkt. Nos. 44, 53)

Any motion for leave to file an amended complaint will be served and filed by

**April 5, 2021**.  The proposed Amended Complaint is to be attached as an exhibit to the motion.

Dated: New York, New York
   March 22, 2021

SO ORDERED.

_____
Paul G. Gardephe
United States District Judge