UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
THERESA SALAMENO, individually and on
behalf of the ESTATE OF LAWRENCE SALAMENO,

               *Plaintiffs*,                         Case No. 1:19-cv-04442-PPG-BCM

    - against -

BRITTANY RAWLINGS, FASHIONBOSS, LLC, and
SMARTBOSS INC.,
               *Defendants*.
-------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPPORT OF DEFENDANTS' MOTION FOR
SANCTIONS PURSUANT TO FED. R. CIV. P. 11 AND 28 U.S.C. § 1927**

DAVIDOFF LAW FIRM, PLLC

Jonathan Marc Davidoff, Esq.
228 East 45th Street, Suite 1110
New York, New York 10017
Tel:  212-587-5971
Fax:  212-658-9852

-and-

MCLOUGHLIN, O'HARA, WAGNER &
KENDALL, LLP

Glen A. Kendall, Esq.
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: 212-920-6695
Fax:  917-382-3934

*Attorneys for Defendants*

Defendants, Brittany Rawlings ("Ms. Rawlings"), FashionBoss, LLC ("FashionBoss"), and SmartBoss, Inc. ("SmartBoss") (collectively, the "Defendants"), by and through undersigned counsel, respectively submit this memorandum of law in support of their motion, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 11, for an order imposing sanctions on Plaintiffs, Theresa Salameno ("Mrs. Salameno") individually and on behalf of the Estate of Lawrence Salameno ("Mr. Salameno") (collectively, the "Plaintiffs" or the "Salamenos"), as well as their counsel, Benjamin Allee, Esq. of Yankwitt LLP ("Mr. Allee"), pursuant to 28 U.S.C.§ 1927 and this Court's inherent powers, for initiating this action when they knew the claims were meritless. The Defendants respectfully request that such sanctions include awarding the Defendants their attorneys' fees and costs incurred in defending this action, that Plaintiffs be directed to bear the costs of expunging the internet references to this litigation, and that Defendants be granted such other and further relief as the Court deems just and proper.

## PRELIMINARY STATEMENT

The Plaintiffs' and their counsel must be sanctioned for filing a Complaint rife with outright fabrications alongside omissions of material information. The allegations in the pleading, which are made to read like a salacious tabloid article and are not supported by a shred of evidence, accuse Ms. Rawlings of engaging in an "unlawful scheme" to "obtain the Salamenos' money [to use] not for its intended purposes but rather to keep up [Ms. Rawlings'] active social life in the Miami party scene" (ECF Dkt. No. 1 ("Compl.") ¶ 5, 20). It is readily apparent that the Plaintiffs and their counsel have intentionally exploited gender stereotypes and maliciously disparaged Ms. Rawlings, an attorney and entrepreneur, in the most incendiary manner to coerce a settlement.

Indeed, because the Complaint is part of the public record, it has already defamed Ms. Rawlings and disparaged her companies' reputations now and into the foreseeable future.[1]

Upon rudimentary due diligence, it becomes abundantly clear that the Plaintiffs' wild allegations about Ms. Rawlings' "long con" against the allegedly "retired, beneficent, and trusting" Salamenos' are plainly false. The allegations that Ms. Rawlings engaged in "reprehensible conduct" to swindle philanthropists for more than a half-million dollars to fund an extravagant lifestyle were obviously asserted for ill motives. This is a classic case of frivolous, vexatious litigation that violates Rule 11 and should not be countenanced by this Court.

From late 2011 to this day, Ms. Rawlings has spent predominantly all her time effectuating the business plans for her companies, FashionBoss and its successor SmartBoss, to develop artificial intelligence business management software that helps startups streamline the way they launch and do business (the "Software"). As demonstrated through documentary evidence, including a financial audit, from January 2012 through December 2020, the Defendants spent more than $1,541,048.78 on valid business expenses and there was no misappropriation of funds or conversion by the Defendants. (*See* Declaration of Mary Titone.)

The Defendants indisputably used the Plaintiffs' $561,000 investment in the companies for legitimate business purposes in furtherance of the businesses' objectives – not for Ms. Rawlings' personal expenditures as alleged.  In fact, the amounts spent by Ms. Rawlings and her family in pursuit of the businesses are *double* the investments made by Mr. Salameno and his investment

---

[1] In fact, a mere ten days after the Complaint was filed, Ms. Rawlings', SmartBoss's and FashionBoss's reputation suffered irreparable damage as the *New York Post* published an article on May 25, 2019 entitled "Fashionista lawyer swindled philanthropist out of $561K: suit" that regurgitated the Complaint's entire smear upon Ms. Rawlings. *See:*
< https://nypost.com/2019/05/25/fashionista-lawyer-swindled-philanthropist-out-of-561k-suit/>.

firm. Most importantly, Defendants offered to make all these documents physically available to Plaintiffs before they filed suit.

SmartBoss's business operations were derailed by Toptal, LLC ("Toptal"), whom SmartBoss engaged in 2016 to act as a technical adviser and employ its experienced software developers to build a fully functional, secure, and scalable custom software and mobile application. After fourteen months of extensive work with Toptal and the payment of more than $240,000 in August 2017, Toptal and its team of developers delivered a defective, nonfunctional, and unsalvageable application that did not conform to SmartBoss's business objectives and plan. (*See* Toptal Pre-Litigation Demand, attached to Rawlings Decl. as Ex Y.)

Moreover, Toptal exposed Defendants' servers to two cybersecurity breaches that compromised all the Defendants' proprietary information, software code, and years of research and development – the severity of which Toptal failed to disclose to Defendants. (*Id*.) Not only did Toptal fail to provide SmartBoss with top-tier developers and the most rudimentary cybersecurity protection to prevent or mitigate the loss of SmartBoss's assets, it also left the Defendants without recourse or remedy to cure the defects and launch its business through the application and website. (*See* Delaware Complaint against Toptal, attached to Rawlings Decl. as Ex BB.) And, most damaging was that the application was essentially unrepairable while substantial financial hurdles existed for the Defendants to get a refund from Toptal and rebuild the Software. (*Id*.) Accordingly, with the consent of Charles Salameno and notice to Mr. Salameno, Ms. Rawlings paid for code auditors and collected the documentary evidence to dispute Toptal's invoices and brought a claim against Toptal for the refund, to no avail.

SmartBoss and Ms. Rawlings ultimately retained counsel in Delaware and New York to file suit against Toptal in which they asserted claims including breach of contract, fraud, and gross

negligence, among other claims, seeking to recover for the damages the Defendants incurred by Total's conduct (including the expenditures for the development of the application and website, which included the funds invested by Plaintiff and all loan holders. (*See* Ex. BB.) If not for the fraud and gross negligence of Toptal, the software would have been completed and earning a return for the companies' investors.

In their Complaint, the Plaintiffs admit that Ms. Rawlings sent a letter to them dated January 27, 2019 to "provide an update" that "a problem had arisen with a software developer" who "had caused the software to be open to the world wide web and a 'hacker' walked in took control of the server," and "that the software developer then quit, and that the SmartBoss website never launched." (Compl., ¶ 49.) The Plaintiffs further admit that Ms. Rawlings wrote that she and SmartBoss had retained counsel to file suit against Toptal, that she was demoralized over the derailment of the business, and that she apologized for her lack of communication. (*Id.* ¶¶ 49-50.)

With knowledge of the Defendants' investment in the Toptal code audit, pre-litigation negotiations, and pending lawsuit against Toptal, the Plaintiffs failed to support the litigation effort. Instead, in complete disregard of the information stated in Ms. Rawlings' letter, of which the Plaintiffs had first-hand knowledge (or second-hand knowledge provided through their son), the Plaintiffs and their counsel served a pre-suit demand upon the Defendants on or about April 25, 2019, enclosing a proposed copy of the frivolous Complaint. (*See* Davidoff Decl., ¶ 6.) At the time, Plaintiffs knew the statute of limitations on at least one of the claims they asserted had lapsed and that Rawlings was funding the lawsuit against Toptal for the Plaintiffs' benefit.

The Plaintiffs' pre-suit demand in April 2019 was an obvious attempt to blackmail the Defendants to settle the Plaintiffs' groundless claims to avoid the adverse publicity and

reputational damage that would result to Defendants from the public filing of this federal lawsuit, no matter how baseless.

During pre-filing conversations with SmartBoss's Delaware litigation counsel (Brian Gottesman of Berger Harris LLP) and Defendants' counsel in this action, Mr. Allee was made aware that his client's allegations in the draft complaint lacked merit, and that publicly available information existed that refuted many of such allegations. (*See* Affidavit of Brian Gottesman of attached to Rawlings Decl. as Ex Z.) The Plaintiffs were provided multiple opportunities to physically inspect the business records and communications maintained by the Defendants – an offer the Plaintiffs refused. (*Id*.) (*See also* Davidoff Decl., Ex. A-C.) Those records and communications, let alone the first-hand knowledge of Plaintiffs and their son, completely refute the Plaintiffs' false narrative that Ms. Rawlings defrauded a retired, innocent investor who suffered of Parkinson's disease to support her lifestyle of partying, shopping, and plastic surgery. (*See* Compl. ¶¶ 5, 21 33.)

After the Defendants failed to comply with the Plaintiffs' pre-suit financial demands, the Plaintiffs and their counsel filed the meritless action, in which they asserted causes of action for common law fraud, breach of contract, and for an accounting.

Substantively, every one of the Plaintiffs' allegations were and are refuted by the records that were offered to the Plaintiffs by the Defendants pre-suit. (*See* Davidoff Decl., Ex. A-C.) Specifically, the records clearly rebut each of the Plaintiffs' false allegations that: (i) their funds were not used by the Defendants for business purposes, when in fact they were; (ii) the Defendants did not employ a team of executives and software engineers to launch the SmartBoss website and business, when in fact they did; (iii) that the Defendants did not have additional investors in the

business, when in fact they did; and (iv) that there was no launch of FashionBoss, when it was available online on the day of filing of the instant action. (*See* Rawlings Decl. ¶¶ 35 53, 69.)

A plain reading of the Complaint, which asserts, in conclusory language and wholly bereft of factual support, precisely the same flawed theories of liability the Defendants' counsel expressly informed the Plaintiffs' counsel were baseless during pre-filing discussions – makes clear that neither the Plaintiffs nor their counsel bothered to conduct even the most basic investigation of their allegations prior to filing the Complaint. (*See* Davidoff Decl. ¶¶ 17-20.) Had the Plaintiffs and their counsel taken the time to inspect the companies' records more than two years ago and acknowledge SmartBoss's litigation efforts against the true wrongdoer, Toptal, rather than run to the courthouse, they would have seen the documentary evidence that disputes every allegation in the Complaint, and unnecessary judicial and corporate resources (as well as reputation and good will) would not have been wasted.

The Plaintiffs also attempt to sidestep a statute of limitations defense by failing to plead that the investment agreement at issue was entered into on April 1, 2013, more than six years before they filed their Complaint on May 15, 2019, and that any theory of fraud arising from representations made by the Defendants to allegedly induce the Plaintiffs to enter said agreement is time-barred. *See* C.P.L.R. § 213(8). Judge Moses noted this time-bar issue in her Report and Recommendation.  (ECF Doc. No. 76.)

Following the Report and Recommendation, Plaintiffs' fraud claims were dismissed with leave to amend, but the Court recognized that the Plaintiffs may not be capable of amending, and thus provided twenty days for an amended complaint to be filed. (*Id*.) As suspected, because the claims were meritless from the outset, the Plaintiffs did not amend the complaint, rather they filed a notice of voluntary discontinuance because they recognized the claims were meritless and

frivolous. (ECF Doc. No. 95.) This Court should not fall for Plaintiffs' disingenuous claim that the Plaintiffs abandoned their claims because of alleged collectability concerns, as this is merely an attempt to divert the Court's attention from the truth: the claims were – from the outset and at all times thereafter – frivolous and a waste of resources, time, and good will. Accordingly, the Defendants request the Court find that sanctions are warranted.

In the Defendants' objection to Judge Moses' report and recommendation, the Defendants sought an order dismissing the claims with prejudice and submitted an abundance of evidence to support their contention that the claims in this action had no basis in law or fact. (*See* ECF Doc. Nos. 79, 86.) Unfortunately, the Plaintiffs continued their pursuit in this action for an additional seven months, and only discontinued this action after the Defendants unequivocally rejected all overtures of a settlement and learned the Court's position on their remaining cause of action.

Accordingly, the Plaintiffs allegations are nothing more than hallow, disparaging, malicious, and conclusory allegations without any basis in fact or law rendering Plaintiffs' claims to be meritless and frivolous, which warrants sanctions.

Plaintiffs and their counsel have shirked their Rule 11 obligation to make "an inquiry reasonable under the circumstances" and to verify that "the factual contentions [in the Complaint] have evidentiary support." Fed. R. Civ. P. 11(b)(3). As was stated by the Defendants prior to the commencement of this action, any reasonable inquiry to the claims herein would have revealed that the Plaintiffs' claims herein are utterly baseless, especially considering publicly available information and communications from Brian Gottesman of Berger Harris LLP. It is readily apparent that this action was commenced for a malicious purpose to harm the Defendants.

For these reasons, further discussed below, the Defendants respectfully request that the Court grant the instant motion and sanction the Plaintiffs and their counsel.

## FACTUAL BACKGROUND

For a full recitation of the facts underlying this motion, the Defendants respectfully refer the Court to the Declaration of Brittany Rawlings, Declaration of Jonathan Davidoff, Declaration of Mary Titone in support of the instant motion and each of the exhibits annexed thereto.

## ARGUMENT

### I.  RULE 11 AND 28 U.S.C. § 1927 PROHIBIT FRIVOLOUS AND FACTUALLY BASELESS PLEADINGS

The Plaintiffs and Mr. Allee filed a frivolous and factually baseless complaint in this action. Rule 11 states that the submission of a pleading, motion, or other paper, an attorney certifies that "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the document is submitted for a proper purpose, the legal claims are nonfrivolous, and "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b).  "Rule 11 imposes a duty on every attorney to conduct a reasonable pre-filing inquiry into the evidentiary and factual support for [a] claim ...." *Capital Bridge Co. v. IVL Tech., Ltd.*, 2007 WL 3168327, at *10 (S.D.N.Y. Oct. 26, 2007).  It serves "to deter baseless filings." *Gal v. Viacom Int'l, Inc.*, 403 F. Supp. 2d 294, 307 (S.D.N.Y. 2005) (internal citation omitted).

A pleading violates Rule 11 where "a competent attorney could not form a reasonable belief that the pleading is well grounded in fact and is warranted by existing law." *W.K. Webster & Co. v. Am. President Lines, Ltd.*, 32 F.3d 665, 670 (2d Cir. 1994).  An attorney also has an obligation not to "reaffirm[ ] to the court and advocat[e] positions contained in [prior] pleadings and motions after learning that they cease to have merit." Fed. R. Civ. P. 11 Advisory Committee's Note.

"[U]nder Rule 11, an attorney has an affirmative duty to make reasonable inquiry into the facts and the law." *In re Austr. & N.Z. Banking Grp.*  Moreover, an attorney must conduct an

independent investigation, and it is not sufficient for the attorney to rely upon the allegations of his client, even if his client is himself an expert. *See Judin v. U.S.*, 110 F.3d 780, 784 (Fed. Cir. 1997) ("there is no doubt that Judin failed to meet the minimum standards imposed by Rule11, and his attorney acted unreasonably in giving blind deference to his client and assuming his client had knowledge not disclosed to the attorney.")

In enforcing Rule 11, a court may "impose an appropriate sanction on any attorney, law firm, or party that violated the rule." Fed. R. Civ. P. 11(c)(1). A represented party may be sanctioned if they "had actual knowledge that the filing of the papers constituted wrongful conduct, e.g. the papers made false statements or were filed for an improper purpose." *Ilkowitz v. Durand*, 2018 WL 1595987, at *19 (S.D.N.Y. Mar. 27, 2018) (citation omitted).

Rather than pleading facts, as opposed to "labels and conclusions," or "naked assertion[s] devoid of further factual enhancement," which are insufficient under federal pleading standards, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), the Complaint here is based solely on "speculation and conjecture," unsupported by "tangible evidence," and is sanctionable on that basis alone. *Binghamton Masonic Temple, Inc. v. Bares*, 168 F.R.D. 121, 127–29 (N.D.N.Y. 1996) (inferring improper purpose from complete lack of factual and legal basis for bringing a claim; holding claims had no chance of success and were frivolous; and awarding monetary sanction of attorneys' fees and nonmonetary sanction of requiring attorneys to seek leave from court before filing papers); *see also Shetiwy v. Midland Credit Mgmt.*, 2014 WL 3739512, at *3 (S.D.N.Y. July 29, 2014) (Rule 11 is violated where, as here, a party "fail[s] to ensure a factual basis for each of their allegations").

Here, a reasonable inquiry by Plaintiffs' counsel into the claims herein would have revealed almost $1 million dollars was loaned by Rawlings and her family, that over $1.5 million was spent

on valid business expenses, and that Rawlings acted in the company's best interest in her business judgment to bring a claim against Toptal for return of money. These basic facts – which decimate the Plaintiffs' allegations – is itself a basis on which to impose sanctions on the Plaintiffs and their counsel.  *See, e.g.*, *Gambello v. Time Warner Commc'ns, Inc.*, 186 F. Supp. 2d 209, 229 (E.D.N.Y. 2002) (imposing sanctions for failure to conduct reasonable inquiry prior to filing, where inquiry would have shown lack of evidentiary support for allegations).

Further, the vitriolic allegations asserted against Ms. Rawlings go beyond "speculat[ive]" and "conjectur[al]," as they are pure fabrication which is cause for the imposition of sanctions under Rule 11.  *See Binghamton Masonic Temple*, 168 F.R.D. at 127–29.

Moreover, the factual and legal deficiencies of these claims cannot be cured so as to satisfy Rule 11.  *See e.g.*, *Mackensworth v. S.S. Am. Merchant*, 28 F.3d 246, 251, 1994 U.S. App. LEXIS 15186, 487 (2d Cir. 1994) (denying leave to amend complaint when it would be futile).  Amending the Complaint in this matter would be futile and only an additional expense and further harassment for the Defendants. The evidence here is demonstrably clear in showing that the Defendants did not make any misrepresentations or breach any contract against the Plaintiffs.  As such, there is no factual basis for this Court to grant the relief that the Plaintiffs seek in the Complaint, or to amend the Complaint.

Respectfully, this Court should enter sanctions under Rule 11 against the Plaintiffs and their counsel to deter repetition of the conduct or comparable conduct by others similarly situated. *See, e.g.*, *Eastway Constr. Corp. v. New York*, 762 F.2d 243 (2d Cir. 1985).

In addition to Rule 11, sanctions should also be imposed against the Plaintiffs' counsel pursuant to 28 U.S.C. § 1927 for engaging in vexatious litigation, and unreasonably multiplying

the cost of the proceedings through the assertion of claims not supported by the application of existing fact and law.  28 U.S.C. §1927, specifically provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

Under this statute, the Court has the power to impose sanctions for conduct of an attorney that is done in bad faith and completely without merit.  *See Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323 (2d Cir. 1999); *see also Eisemann v. Greene*, 204 F.3d 393, 2000 U.S. App. LEXIS 2281 (2d Cir. 2000).

Here, the Plaintiffs' fraud, breach of contract, and accounting claims are baseless and frivolous.  From the outset, the Plaintiffs' counsel has taken every step to besmirch the Defendants and carry out the false allegations against the Defendants with an unbridled vigor. The sexist allegations painting Ms. Rawlings as a young woman exploiting a rich, trusting older man to fund her profligate lifestyle are beyond the pale. Egregiously, the Plaintiffs' counsel has demonstrated a reckless and complete indifference to obvious facts and law prior to and since the filing. As such, the Court should enter sanctions against the Plaintiffs' counsel pursuant to 28 U.S.C. § 1927.

Lastly, it is well-settled that courts have the inherent power to impose sanctions. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). This inherent power allows courts to impose sanctions on a litigant for acting in bad faith, vexatiously, wantonly, or for oppressive reasons.  *Id.* at 45–46.  Unlike Rule 11, which governs only papers filed with the Court or 28 U.S.C. § 1927, which governs only the actions of attorneys, the inherent power extends to a full range of litigation abuses.

Thus, for the reasons more fully stated herein, this Court should impose sanctions against the Salamenos pursuant to Rule 11, and against Mr. Allee legal pursuant to 28 U.S.C.§ 1927 and this Court's inherent powers.

## II.    THE SALAMENOS HAD NO FACTUAL BASIS TO ALLEGE FRAUD

The Plaintiffs erroneously allege in the Complaint that Ms. Rawlings, through purportedly false representations, solicited, took, and miraculously disappeared with the money Plaintiffs willfully invested in SmartBoss and FashionBoss, and that, in doing so, allegedly committed fraud upon the Plaintiffs. (Compl. ¶¶ 64-68.) The Complaint's fraud allegations against the Defendants are simply false, without foundation, factual basis, or legal merit.  Despite being warned repeatedly by the Defendants' counsel, the Salamenos and their counsel have now accused Ms. Rawlings, in a federal court pleading, of being a con artist, making the flat-out fabrication inherent in the Complaint part of the public record. Rule 11 exists to discourage precisely this kind of bad-faith abuse of process, and the Defendants respectfully request that the Court impose sanctions here. *See Abner Realty, Inc. v. Adm'r of Gen. Servs. Admin.*, No. 97 Civ. 3075 (RWS), 1998 U.S. Dist. LEXIS 11042, at \*18 (S.D.N.Y. July 22, 1998) ("[T]he total lack of substance in the fraud claim . . . and the egregious and unjustified neglect to (sic) the 'reasonable inquiry' requirement of Rule 11 give rise to the inference that the action was filed for improper purposes.").

To plead a claim of common law fraud in New York, a plaintiff must allege: "(1) a material false statement or omission; (2) the defendant intended to defraud the plaintiff; (3) the plaintiff reasonably relied upon the representation or omission; and (4) the plaintiff suffered damage as a result of such reliance." *B & M Linen, Corp. v. Kannegiesser, USA, Corp.*, 679 F. Supp. 2d 474, 480 (S.D.N.Y. 2010) (internal quotation marks omitted). Claims of fraud must be pleaded "'with particularity,'" *id.* at 481 (quoting Fed. R. Civ. P. 9(b)), and thus a plaintiff must "(1) detail the

statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (internal quotation marks omitted).

Based upon cherry-picked statements, outdated photos, and omission of the Plaintiffs' own unclean hands, the Plaintiffs argue that Ms. Rawlings knowingly made false and fraudulent representations, and omitted material information, to "deceive" Plaintiffs and "induce" them to give her money as loans and investments. Plaintiffs purportedly claim that, because they reasonably relied on Ms. Rawlings' alleged misrepresentations and material omissions in providing her with money, her allegedly "false and fraudulent misrepresentations" caused Plaintiffs' injury. (Compl. ¶¶ 64-68.)

The Salamenos' allegations that Ms. Rawlings solicited their money with false representations, ultimately obtaining over $500,000 from them, is patently unmeritorious.  At all times, Ms. Rawlings was an officer and director of the Defendant corporations and an investor thereof.  Ms. Rawlings acted only in the best interest of her companies as well as the Plaintiffs, and continues to do so (*i.e.*, commencing the Toptal litigations). The Plaintiffs' claim that Ms. Rawlings used corporate funds for her own personal benefit is absolutely disputed by the documentary evidence, the Toptal action, the existence of FashionBoss.com, and is not supported by one iota of evidence that the Plaintiffs could produce. (*See e.g.*, 2012-2018 FashionBoss and SmartBoss Schedule of Contractor Expenses, Rawlings Decl. Ex. Y; FashionBoss.Com Layout, Rawlings Decl. Ex. T; August 2016 Email re: SmartBoss V1 Launch, Rawlings Decl. Ex. P; Toptal Settlement Memo, Rawlings Decl. Ex. W.)

In numerous instances, the Plaintiffs and their counsel refused receipt of, failed to investigate, and/or intentionally omitted substantial information in the Plaintiffs' own hands concerning the investment. For instance, Plaintiffs omitted alleging that the investment was made at arms-length, and only after Mr. Salameno, a high-net-worth, sophisticated investor who has a depth of experience and market knowledge, and Penny Black, a private investment firm focused on seed and early-stage venture capital, conducted their due diligence of Ms. Rawlings and her business plans. (*See, e.g.*, Lawrence Salameno Background, Rawlings Decl. Ex. C; November 2012 Emails re: Business Plan, Rawlings Decl. Ex. D). Further, Plaintiffs omitted alleging that Mr. Salameno's and Penny Black's investment trickled in over the course of five (5) years (2012-17) based on the Defendants meeting certain performance milestones to allow Mr. Salameno and Penny Black to maintain control over the business. (*See, e.g.*, Salameno Checks, Rawlings Decl. Ex. L.)  The Salamenos omit the fact that their son, Charles, was an active employee and officer of SmartBoss and routinely informed them of business developments. (*See, e.g.*, SmartBoss Team, Rawlings Decl. Ex. V; August 2016 Email re: SmartBoss V1 Launch, Rawlings Decl. Ex. P.) Plaintiffs also omit that FashionBoss.com exists online and that SmartBoss was tested by and demonstrated to the Plaintiffs by Ms. Rawlings and their son, Charles Salameno.

Thus, because there was no objective reasonable basis for either the Plaintiffs' or their counsel to believe that the Plaintiffs' allegations concerning the Defendants fraud were grounded in fact, sanctions are warranted in this case. *See, e.g., Saltz v. City of N.Y.*, 129 F. Supp. 2d 642, 646–47 (S.D.N.Y. 2001) (imposing Rule 11 sanctions for failure to "make a reasonable inquiry into the facts alleged in plaintiff's complaint" where plaintiff's counsel's pre-filing investigation consisted of barely more than interviewing his client).

### III.   THE SALAMENOS HAD NO FACTUAL BASIS TO ALLEGE BREACH OF CONTRACT

The Salamenos' breach of contract claim is likewise without merit. Plaintiffs assert that Ms. Rawlings and SmartBoss breached a contract with Plaintiffs by their purported failure to: (1) launch the website and operate SmartBoss; (2) use Plaintiffs' funds for the business of SmartBoss; (3) continue communication with Plaintiffs in or around August 2017; (4) provide standard information and inspection right to Plaintiff; and (5) issue stock. (Compl. ¶¶ 57-61.) Consequently, the Plaintiffs claim that, because of the Defendants' purported "breaches of the Contract," they have allegedly been damaged. (*Id.* at ¶ 62.)

"Under New York law, a breach of contract claim requires (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Balk v. N.Y. Inst. of Tech.*, 683 F. App'x 89, 95 (2d Cir. 2017).

Here, there is no factual support for the Plaintiffs' argument that the Defendants breached the contract with Mr. Salameno by not using the investment proceeds for SmartBoss's working capital needs, particularly since Toptal has admitted to the receipt of $241,802.79 from SmartBoss in the Delaware litigation and FashionBoss.com is online and active. Further, the Plaintiffs' allegation that Ms. Rawlings did not maintain responsibility for the day-to-day operations of the business is belied by the documentary evidence, and the 26 visits to the Salamenos by Ms. Rawlings as well as over 250 emails between Ms. Rawlings and the Salamenos regarding the businesses. (*See, e.g.,* Rawlings Decl. Exs. P, W, Y.)   Ms. Rawlings' lack of continuous communication with Mr. Salameno directly, from May 2018 through January 2019, although uncharacteristic of Ms. Rawlings, was not an abandonment of her business duties nor a breach of any legal or contractual duties, nor a justification for disparaging Ms. Rawlings in the Complaint.

At all relevant times, Ms. Rawlings, as a director and officer, used her business judgment and informed Mr. Salameno and Penny Black of any major business decisions. The Delaware business judgment rule (which governs Ms. Rawlings' conduct in her capacity as an officer and director of SmartBoss, a Delaware corporation) creates a presumption that when corporate officers and directors make business decisions, they do so in good faith, on an informed basis, and with the best interests of the company in mind. *See Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984). When the business judgment rule applies, courts will take a "hands off" approach and will not intervene with a corporation's sound business decision. *See In re Trados Inc. S'holder Litig.,* 73 A.3d 17, 43 (Del. Ch. 2013). Importantly, the business judgment rule is the default standard of review in Delaware, which is where SmartBoss was incorporated.

Here, there is no factual support for the allegation that Ms. Rawlings breached an agreement by not providing Mr. Salameno with industry standard reporting or inspection rights. Further, Ms. Rawlings did not breach any agreement by not issuing stock certificates. There is no factual support for the allegation that Ms. Rawlings failed to heed Mr. Salameno's demand to issue stock certificates. Moreover, the Delaware business judgment rule affords Ms. Rawlings the discretion to issue stock certificates. Ms. Rawlings also maintained to third parties since 2013 that Mr. Salameno and Penny Black were investors in the entity Defendants (notwithstanding their breach of the April 1, 2013 agreement); therefore, a formal stock issuance was not a priority and would not harm Mr. Salameno and Penny Black.

Lastly, as the incorporator of SmartBoss, Ms. Rawlings was shielded from liability and should not have been named as a defendant in her individual capacity. "It is well established ... that a business can be incorporated for the very purpose of enabling its proprietor to escape personal liability ... even though the proprietor continues to benefit from the business's success."

*Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc*., 126 F.Supp.3d 388, 402 (S.D.N.Y. 2015) (citation omitted); *see Nelson v. Adams USA, Inc*., 529 U.S. 460, 471 (2000) ("One-person corporations are authorized by law and should not lightly be labeled [a] sham."); *Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc*., 952 F.Supp.2d 542, 578 (S.D.N.Y. 2013) ("[T]he mere fact that an individual is the sole member, shareholder, or a controlling person in an entity does not, by itself, justify piercing the corporate veil."); *Mirage Ent., Inc. v. FEG Entretenimientos S.A*., 326 F. Supp. 3d 26, 34–35 (S.D.N.Y. 2018).

## IV.    THE RULE 11 NOTICE AND TIMELY SUBMISSION OF THE MOTION.

The Plaintiffs and their counsel were properly noticed and advised that they had the opportunity to prevent their misconduct in April of 2019 prior to the commencement of this action. (*See* Davidoff Decl., Ex A.) The Plaintiffs and their counsel were again properly noticed and advised that they had the opportunity to dismiss the action with prejudice against the Defendants or be exposed to Rule 11 sanctions if they perpetuated their misconduct in the prosecution of the frivolous claims in this action. (*See* Davidoff Decl. Ex. D.) Plaintiff and Mr. Allee were noticed that if the action was dismissed within twenty-one (21) days from the service of the safe harbor letter, pursuant to Rule 11, the instant motion would not have been filed. (*Id*.) However, the Plaintiffs maintained their frivolous claims and proceeded in this action with actual notice of the factual and legal deficiencies identified herein, resulting in this motion being filed.

Although Rule 11 contains no explicit time limit for serving the motion, the "safe harbor" provision functions as a practical time limit and motions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission. *See In re Pennie & Edmonds LLP*, 323 F.3d 86 (2d Cir. 2003).  The Advisory Committee has stated that, "[o]rdinarily the motion [Rule 11]

should be served promptly after the inappropriate paper is filed, and, if delayed too long, may be viewed as untimely."[1] *See* Fed. R. Civ. P. Rule 11 (Advisory Comm. 1993 Amendment). In fact, there is nothing improper to serve such a motion early on in a case, even if atypical. *Safe-Strap Company, Inc. v. Koala Corp*., 270 F. Supp. 2d 407, 413 (S.D.N.Y. 2003) (internal citations omitted). "If anything, parties that seek sanctions for the submission of a complaint are encouraged to file a Rule 11 motion promptly after the complaint is filed." *Id*. at n. 413. The Court in *Safe-Strap,* further noted that:

> Parties that initially remain idle after a Rule 11 violation has come to their attention risk the denial of their subsequent Rule 11 motion on the basis of unreasonable delay. *See, e.g. General Motors Acceptance Corp. v. Bates* (5th Cir.1992) 954 F.2d 1081, 1086–1087 (affirming the denial of a Rule 11 motion filed two years and nine months after the alleged violation).
> ****
> **When, as here, the "inappropriate paper" averred to is the complaint, the foregoing considerations suggest that the party which hopes to secure sanctions for the submission of that pleading should move for sanctions promptly after the complaint is filed.**

*Id.* (emphasis added). The Defendants (and counsel) did exactly what this Court instructed parties to do in *Safe-Strap*, which is to serve (and then file) the Rule 11 motion promptly after the complaint is filed where it is the "inappropriate paper".

As such, the Defendants properly served an earlier draft of this motion with their safe harbor letter on the Plaintiffs, who declined to withdraw the frivolous claims and necessitated unnecessary legal fees to be incurred by the Defendants. This Court previously denied the prior Rule 11 motion and directed that such be filed at the conclusion of this action. Therefore, the instant motion is proper, and the Plaintiffs and Mr. Allee were placed on notice, both before they filed suit and during the litigation, that the claims in the Complaint were frivolous.

**CONCLUSION**

For the reasons set forth above, the Defendants respectfully request that the Court grant the instant motion and sanction the Plaintiffs and their counsel and award the Defendants all their attorneys' fees and costs incurred in defending this action (including those expended in their pre-suit research and investigation), that Plaintiffs be directed to bear the costs of expunging the internet references to this litigation, and that Defendants be granted such other and further relief as the Court deems just and proper.

Dated: New York, New York
        June 10, 2021

Respectfully submitted,

DAVIDOFF LAW FIRM, PLLC

*/s/ JMD*

Jonathan Marc Davidoff, Esq. (#JD9157)
*Attorneys for Defendants*
228 East 45th Street, Suite 1700
New York, New York 10017
Tel:  212-587-5971
Fax:  212-658-9852

MCLOUGHLIN, O'HARA, WAGNER & KENDALL, LLP

*/s/ GAK*

Glen A. Kendall, Esq. (#GK0285)
*Attorneys for Defendants*
250 Park Avenue, 7th Floor
New York, New York 10177
Tel: 212-920-6695
Fax:  917-382-3934